INTERNATIONAL HEATING & AIR CONDITIONING CORPORATION & another[1] *vs.* RICH CONSTRUCTION CO., INC. & others.[2]

Suffolk.    December 8, 1976. — March 9, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Public Works,* Statutory bond.

Statutory history of the requirement of payment bonds on public construction projects. [136-138]

Where a supplier sold machinery to a subcontractor and one year later shipped rubber vibration eliminators which were never installed under the machinery, a claim by the supplier for payment for the machinery under a statutory surety bond which was filed within ninety days after shipment of the rubber pads was timely. [138-139]

BILL IN EQUITY filed in the Superior Court on August 10, 1972.

The case was heard by *Keating, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

---

[1] Lennox Industries, Inc. (the supplier).

[2] Allied Heating Co., Inc. (the subcontractor), and Planet Insurance Company (the surety).

*William Lender* for Rich Construction Co., Inc. & another.

*Jerome A. McCusker*, for Lennox Industries, Inc., submitted a brief.

BRAUCHER, J.   A supplier furnished materials to a subcontractor on a construction project for the city of Boston, and now claims payment under a statutory surety bond securing "payment ... for ... materials used or employed therein ...." G. L. c. 149, § 29, as amended through St. 1964, c. 609, §§ 4, 5. Most of the materials were furnished before February 3, 1972. Four rubber vibration eliminators were shipped on February 20, 1973, but were never installed. The supplier filed its sworn statement of claim on April 4, 1973, and the sole question before us is whether that filing was "prior to the expiration of ninety days after the claimant ceases to ... furnish ... materials ... as aforesaid, for which claim is made," as required by the statute. We agree with the judge of the Superior Court that the filing was timely, and affirm the judgment for the supplier.

The supplier intervened as a plaintiff in a suit brought by another claimant against the general contractor and the surety on the general contractor's bond. The subcontractor intervened as a defendant. The case was referred to a master, who made findings of fact. His "general findings" were that the subcontractor was indebted to the supplier in the sum of $10,000 plus interest, but that the items shipped in 1973 were never used or employed by the subcontractor in the construction of the project. For that reason, he found for the general contractor and the surety. The judge adopted the master's subsidiary findings, but ruled that the sworn statement of claim was filed within the statutory ninety-day period from the date when the last materials were furnished and the relationship of debtor-creditor arose. The general contractor and the surety appealed from the resulting judgment against them, and we transferred the case to this court on our own motion.

We summarize the master's subsidiary findings. The

subcontractor ordered equipment from the supplier which was shipped in four instalments, the last dated February 3, 1972. One item was a combination system, weighing about 2,500 pounds, to control heating, cooling and ventilation, which was installed by the subcontractor with its own labor force. One of the ancillary pieces of equipment for that system is a set of four rubber pads called vibration eliminators, on which the 2,500 pound equipment rests. The master stated that he made no finding whether the pads were shipped with the system in January, 1972. It is the supplier's usual practice, when a subcontractor installs its equipment, to test for proper functioning, and in January, 1973, its trouble shooter reported that the vibration. eliminators had not been installed. The supplier sent them to the job site on February 20, 1973, without charge, but there was no evidence that they were ever installed or used or employed in the project. The supplier's sworn notice of claim was filed within ninety days after the rubber pads were sent.

The requirement of payment bonds on public construction projects is traceable to St. 1878, c. 209. See Burgess, Creditors' Problems on Public Works Projects in Massachusetts, 40 B.U.L. Rev. 239, 240 (1960). That statute required security, by bond or otherwise, in the construction or repair of public works "upon which liens might attach for labor or materials if they belonged to private persons," for payment by contractors and subcontractors for labor performed or furnished and for materials used in the construction or repair. The quoted language disappeared when the statute became R. L. c. 6, § 77 (1902), but we continued to find a statutory object to give laborers and materialmen security equivalent to the lien which the law creates on the property of private owners in like cases. See *Massachusetts Gas & Elec. Light Supply Co. v. Rugo Constr. Co.*, 321 Mass. 20, 22-23 (1947), and cases cited. Under the law relating to mechanics' liens, as it stood before 1915, no lien would attach for materials that did not form a part of the completed structure, and recovery on a statutory payment bond for such materials

was similarly denied. *George H. Sampson Co.* v. *Commonwealth*, 202 Mass. 326, 333 (1909). Thus a claim for gunpowder used in blasting in the construction of an aqueduct was valid, since "in a general sense, the material enters into the completed structure." *Ibid.* But a claim for coal burned to furnish power was disallowed. *Id.* at 337-338.

In 1915 the mechanics' lien law underwent a radical change. See *Manchester* v. *Popkin,* 237 Mass. 434, 438 (1921). Since 1915 the mechanics' lien statutes have referred to material furnished "by virtue of said contract" or furnished "under a contract with a contractor or with any sub-contractor of said contractor," rather than to material "used" in the project. G. L. c. 254, §§ 2, 3, originally enacted as St. 1915, c. 292, §§ 2, 3, and amended by St. 1916, c. 306, §§ 1, 2. By St. 1922, c. 416, the words "or employed" were inserted after the word "used" in the statute requiring payment bonds on public construction projects, and we read the amendment as broadening the coverage to include materials "consumed or made so worthless as to lose their identity." *American Casting Co.* v. *Commonwealth,* 274 Mass. 1, 6 (1931). Otherwise, however, we continued to insist that the materials be physically incorporated in the construction work. *Walsh Holyoke Steam Boiler Works, Inc.* v. *McCue,* 289 Mass. 291, 294 (1935).

By similar analogy to superseded provisions of the mechanics' lien law, we have insisted that the statutory sworn statement of claim under a payment bond must be filed after, not before, the materialman's performance is complete. *International Business Machs. Corp.* v. *Quinn Bros. Elec. Co.,* 321 Mass. 16, 19 (1947). See *Lock Joint Pipe Co.* v. *Commonwealth,* 331 Mass. 346, 351-352 (1954), and cases cited. Contrast G. L. c. 254, § 8 (mechanics' lien statement to be filed within thirty days after the date on which the contract "is to be performed"). Consistently with that rule, we have upheld a filing within the statutory period after belated corrective work was completed. *Ross* v. *Planet Ins. Co.,* 361 Mass. 852, 853 (1972), and cases cited. Cf. *Peerless Unit Ventilation Co.* v. *D'Amore*

*Constr. Co.,* 283 Mass. 121, 124-125 (1933) (claim denied for work "under a new and independent arrangement" or for "gratuitous performance of work not contracted for"). The present record does not permit a conclusion that the rubber pads were furnished independently of the contract. The master found that they were required in order to have a proper installation of the system, and on that finding we think the judge correctly ruled that the contract was not completed until they were provided.

The defendants' principal argument rests on a statement in *Lock Joint Pipe Co.* v. *Commonwealth,* 331 Mass. 346, 350 (1954): "The import of our cases is that the sworn statement of claim must be filed within" the statutory period "after the claimant furnishes the last materials which become part of the installation." That statement was not necessary to the decision in the *Lock Joint Pipe* case, but it was fully supported by the decision of a divided court in *Kennebec Framing Co.* v. *Pickering,* 142 Mass. 80, 82 (1886), a decision under our former mechanics' lien law.

We formerly took the view that a mechanics' lien "is not a common-law right, but a creature of the statute. It can be preserved and enforced only by a strict compliance with the requirements of the statute. There are no equities to be invoked in aid of it." *Gale* v. *Blaikie,* 129 Mass. 206, 209 (1880). If the payment bond statute were to be "construed according to the same principles," as we said in *Cook Borden & Co.* v. *Commonwealth,* 293 Mass. 174, 180 (1936), there would be much force in the defendants' argument. But in modern times we have repeatedly said that the payment bond statute "should be given a broad or liberal construction to accomplish its intended purpose," the protection of "laborers and materialmen from nonpayment by contractors and subcontractors engaged in the construction of public buildings or public works." *American Air Filter Co.* v. *Innamorati Bros.,* 358 Mass. 146, 150 (1970).

We are concerned in the present case solely with the timeliness of the filed claim. No question is presented as to the amount to be recovered if the claim was timely

filed. We have held that "the time period may run from the last date of receipt of the materials by the consignee." *Mosaic Tile Co.* v. *Rusco Prods., Inc.,* 350 Mass. 433, 439 (1966). And we think it is established that the claim may be filed before the materials are installed. *Lock Joint Pipe Co.* v. *Commonwealth,* 331 Mass. 346, 353 (1954). *American Air Filter Co.* v. *Innamorati Bros.,* 358 Mass. 146, 151 (1970).

In the *Lock Joint Pipe* case the supplier filed a claim within the statutory period after each of several shipments, but some of the materials, including all those in the last shipment, were never installed. We upheld the claim and said the statutory security could be "enforced for the proportion which the number of linear feet of pipe installed bears to the number delivered." 331 Mass. at 353. In the *American Air Filter* case the supplier filed its claim within the statutory period after delivery of the materials to a subcontractor at the site. Many months later, after the materials had been seized and sold by the subcontractor's trustee in bankruptcy, they were installed by a substitute subcontractor. We upheld the claim.

Thus the claim in the present case would clearly have been timely filed if the rubber pads had later been installed. It would be anomalous if the subsequent failure of the subcontractor to install them were retroactively to render the supplier's claim untimely. Cf. *Giant Portland Cement Co.* v. *State,* 232 N.Y. 395, 403 (1922) (diversion by subcontractor); Note, 1960 Wis. L. Rev. 350, 351 (mechanics' lien). The anomaly would not be founded in the words of the statute. In a case of first impression, we are not prepared so to extend the outworn analogy to superseded mechanics' lien statutes.

*Judgment affirmed.*