SANDRA K. GOLDEN *vs.* GENERAL BUILDERS SUPPLY LLC.

Norfolk. February 2, 2004. - May 12, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Contract,* Construction contract. *Mechanic's Lien. Lien. Practice, Civil,* Counterclaim and cross-claim, Complaint.

This court concluded that a civil action to enforce a mechanic's lien could be filed as a counterclaim in the property owner's action to discharge that same lien [654-658], but that the relation back provisions of G. L. c. 260, § 36, did not apply to such a counterclaim for purposes of determining whether the lien enforcement action was timely commenced, because application of the relation back doctrine would be contrary to the terms of the mechanic's lien statute and would seriously undermine its operation [658-661].

CIVIL ACTION commenced in the Superior Court Department on August 24, 2001.

The case was heard by *Elizabeth Butler,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Marshall F. Newman* for the defendant.

*Dana F. Rodin* for the plaintiff.

SOSMAN, J. In this appeal, we consider (1) whether a civil action to enforce a mechanic's lien may be filed as a counterclaim in the property owner's action to discharge that same lien, and (2) if so, whether such a counterclaim relates back to the filing date of the property owner's complaint for purposes of determining whether the lien enforcement action was timely commenced. See G. L. c. 254, §§ 5, 11, 15A; G. L. c. 260, § 36. The plaintiff owner, Sandra K. Golden, filed an action to discharge the defendant's lien pursuant to G. L. c. 254, § 15A (*b*) and (*c*). The defendant, General Builders Supply LLC (General Builders), sought to enforce its mechanic's lien by way of a counterclaim filed four weeks after the deadline set forth in

G. L. c. 254, § 11, asking that it "relate back" to the filing of Golden's complaint, which had occurred a few days prior to that deadline. The plaintiff's request for an order discharging the lien was allowed on various grounds, including failure to commence a timely action for enforcement, and General Builders's counterclaim for enforcement of the lien was dismissed. General Builders appealed, and we transferred the case to this court on our own motion. For the following reasons, we conclude that a civil action to enforce a mechanic's lien may be brought as a counterclaim, but that the relation back provisions of G. L. c. 260, § 36, do not apply to such a counterclaim. We therefore affirm the judgment.

1. *Background.* In the fall of 2000, Golden and her husband hired a contractor to construct an addition on their home in Quincy. Over the course of the project, General Builders delivered supplies and materials to the site pursuant to an alleged written subcontract with the contractor, but received only partial payment from the contractor. On April 25, 2001, General Builders recorded a notice of contract with the Norfolk County registry of deeds, see G. L. c. 254, § 4, and on May 29, 2001, General Builders recorded a document entitled "Statement of Lien," claiming that it was owed $15,220.59 for the materials furnished to Golden's property, see G. L. c. 254, § 8.[1] Unable to resolve General Builders's claim, Golden filed a complaint in the Superior Court on August 24, 2001, alleging various defects in General Builders's ostensible mechanic's lien, and seeking to discharge that lien pursuant to G. L. c. 254, § 15A (*b*) and (*c*).

The deadline for General Builders to commence an action to enforce its lien was August 27, 2001 (ninety days from the May 29, 2001, recording of the statement of account). G. L. c. 254, § 11. No enforcement action was filed prior to the expiration of

---

[1]The statute requires the contractor or subcontractor claiming a lien to file and record "a statement, giving a just and true account of the amount due or to become due him, with all just credits, a brief description of the property, and the names of the owners set forth in the notice of contract." G. L. c. 254, § 8. Such a statement is customarily referred to as a "statement of account," see G. L. c. 254, § 15A (*b*); *Tremont Tower Condominium, LLC* v. *George B.H. Macomber Co.*, 436 Mass. 677, 680, 681 (2002); *Ng Bros. Constr.* v. *Cranney*, 436 Mass. 638, 642, 643 (2002), but we attach no significance to the use of a slight variation in nomenclature on this statement of account.

that deadline. However, on September 24, 2001, General Builders filed its answer to Golden's complaint, including in that answer a "counterclaim to enforce mechanic's lien." The next day, the judge held a hearing on Golden's request for an order discharging the lien. At that time, Golden submitted a memorandum contending that, in addition to the lien defects alleged in her original complaint, the lien was now dissolved due to General Builders's failure to commence a timely action to enforce the lien. See *id.* On October 9, 2001, the judge granted Golden's request for discharge of the lien "for the reasons set forth in the plaintiff's Memorandum." Judgment was entered ordering the discharge of the lien and dismissing General Builders's counterclaim. The present appeal followed.

2. *Discussion.* a. *Counterclaim to enforce a mechanic's lien.* Golden contends that an action to enforce a mechanic's lien may only be brought by way of an original complaint, not by means of a counterclaim. She relies on the statute's requirements that the "plaintiff shall bring his action" to enforce the lien, that the lien be dissolved "unless a civil action to enforce it is commenced," and that a copy of "the complaint" be recorded in the registry of deeds "within thirty days of the commencement of the action," contending that those words in the mechanic's lien statute must be literally interpreted to preclude a lien enforcement action by way of any procedural device other than an action "commenced" by original complaint brought by the contractor as plaintiff. See G. L. c. 254, § 5. See also G. L. c. 254, § 11; Mass. R. Civ. P. 3, as amended, 385 Mass. 1215 (1982) ("civil action is commenced" by mailing or filing "complaint and an entry fee").

Because a mechanic's lien is purely a creation of statute, we have consistently required exact compliance with the statute in order to create, perfect, and enforce such a lien. See *Ng Bros. Constr.* v. *Cranney*, 436 Mass. 638, 642, 644 (2002); *National Lumber Co.* v. *LeFrancois Constr. Corp.*, 430 Mass. 663, 666 (2000); *East Coast Steel Erectors, Inc.* v. *Ciolfi*, 417 Mass. 602, 605 (1994); *Mullen Lumber Co.* v. *Lore*, 404 Mass. 750, 752 (1989). "The [mechanic's lien] statute is strictly construed against the party claiming the lien." *Ng Bros. Constr.* v. *Cranney, supra* at 644, citing *Mullen Lumber Co.* v. *Lore, supra.*

However, our adherence to these principles of strict statutory construction, and our insistence on precise compliance with those statutory terms, does not mean that the rules of civil procedure are inapplicable to proceedings concerning mechanic's liens. Nothing in the statute suggests that proceedings to enforce a lien under G. L. c. 254, § 5, or proceedings to discharge a lien under G. L. c. 254, § 15A, will not be governed by ordinary procedural rules. Absent some incompatibility between a specific procedural rule and the provisions of the statute, we will apply and enforce both. See *National Lumber Co.* v. *LeFrancois Constr. Corp., supra* at 670-672 (relation back provisions of Mass. R. Civ. P. 15 [c], 365 Mass. 761 [1974], applied to amendment of mechanic's lien enforcement complaint to add as party current owner of property).

The rules liberally allow a party to "state as a counterclaim *any claim* against an opposing party" (emphasis added). Mass. R. Civ. P. 13 (b), 365 Mass. 758 (1974). An action to enforce a mechanic's lien under G. L. c. 254, § 5, is a form of "claim" that the contractor has against the owner of the property encumbered by the lien.[2] See *National Lumber Co.* v. *LeFrancois Constr. Corp., supra* at 666-670. Straightforward application of rule 13 (b) indicates that such an action may, like any other "claim," be brought as a counterclaim in any action that the property owner has brought against the lienholder.[3]

Notwithstanding that straightforward conclusion under the

[2]The lien itself may only be enforced against the property by way of sale, G. L. c. 254, § 18, but an action to enforce the lien is nevertheless "commenced and prosecuted against" the owner. See G. L. c. 254, § 23.

[3]Although the issue is not before us in the present appeal, it may well be that a mechanic's lien enforcement action would qualify as a compulsory counterclaim that must be asserted in the property owner's action seeking to discharge that same lien. See Mass. R. Civ. P. 13 (a), as amended, 423 Mass. 1405 (1996) ("pleading shall state as a counterclaim any claim for relief the court has power to give which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim"). A claim to enforce the lien would arise out of the same "transaction or occurrence" as the property owner's claim to discharge the lien, and the same courts are authorized to hear both claims. See G. L. c. 254, §§ 5, 15A (both lien enforcement action and action to discharge lien to be brought in "the superior court for the county where such land lies or in the district court in the judicial district where such land lies"). In a different context, the Appeals Court has

wording of rule 13 (b), we also consider whether allowing a lien enforcement action to be brought as a counterclaim would undermine any aspect of the mechanic's lien statute. See *National Lumber Co.* v. *LeFrancois Constr. Corp.*, *supra* at 669-670 (considering whether allowing contractor to amend complaint to add current owner as defendant would impair reliability of recording system with respect to mechanic's liens). We fail to see how allowing lien enforcement actions to be brought by way of counterclaim would be incompatible with the statutory system governing mechanic's liens. Beyond the requirement of timeliness (which we address below), the only other requirements for such an action are that the "complaint" must "contain a brief description of the property sufficient to identify it, and a statement of the amount due," and that an attested copy of the "complaint" be filed and recorded in the registry of deeds "within thirty days of the commencement of the action." G. L. c. 254, § 5. Those requirements can all be met by a pleading (customarily an answer) asserting a counterclaim against the property owner — the counterclaim itself must include the necessary description of the property and statement of amount due, and an attested copy of that pleading must be filed and recorded with the registry of deeds within thirty days of its filing with the court.

Nor would the filing of a contractor's or subcontractor's counterclaim prevent the prompt determination of the owner's claim of entitlement to discharge of the lien. By definition, the lien cannot be enforced if it is invalid or defective, and the judge would presumably rule on those claimed defects "expeditiously," as required by G. L. c. 254, § 15A, before proceeding with any enforcement of the lien pursuant to the counterclaim. The types of defects that can result in an order "summarily

---

held that the compulsory counterclaim requirements of rule 13 (a) apply to actions concerning mechanic's liens. See *National Lumber Co.* v. *Canton Inst. for Sav.*, 56 Mass. App. Ct. 186 (2002) (material supplier barred from bringing action concerning priority of mechanic's lien when it failed to bring claim as counterclaim in bank's postforeclosure interpleader action). Because the present appeal challenges whether counterclaims to enforce mechanic's liens may be brought at all, we consider only whether they are at least permissive counterclaims under Mass. R. Civ. P. 13 (b), 365 Mass. 758 (1974).

discharging" the lien under G. L. c. 254, § 15A, are normally amenable to immediate determination on undisputed documents and matters of public record. A lien can be "summarily" discharged under that section if "it appears from the notice of contract or a statement of account that the claimant has no valid lien by reason of the character of, or the contract for, the labor or materials or rental equipment, appliances or tools furnished and for which a lien is claimed," if the requisite notices and statements have not been timely filed and recorded, if there has been any other failure to comply with the statute that would invalidate the lien, or if the lien rights "are foreclosed by judgment or release." *Id.* In other words, summary discharge of the lien can only be obtained for defects that will customarily appear of record or be readily ascertainable by reference to undisputed documents — defects in the notice of contract or statement of account, failure to timely record the notice or statement, or a judgment or release that would preclude the lien. That the counterclaim might raise issues of greater complexity and factual dispute (e.g., the amount the contractor was owed under the contract) would not prevent the judge from prompt consideration whether the undisputed documents and public records entitle the plaintiff to discharge of the lien (and, by definition, dismissal of any counterclaim for enforcement). The pendency of a counterclaim to enforce the lien will not delay resolution of the threshold issues affecting the lien's validity or otherwise compromise the objective of expedited rulings on the issues set forth in § 15A. In the event the lien is *not* dischargeable for any of the reasons articulated in § 15A, the parties' contentions on other issues concerning the enforceability of the lien may proceed as part of the same action, sparing the parties and the court from the needless duplication of effort and procedural clutter that rule 13 is designed to avoid. The economies and consistency that rule 13 provides would be beneficial in actions concerning mechanic's liens, just as they are in other actions.

We thus see no conflict between rule 13 (b) and the mechanic's lien statute that would convince us to suspend the operation of rule 13 (b) for proceedings involving mechanic's

liens.[4] As in *National Lumber Co.* v. *LeFrancois Constr. Corp.,* *supra* at 666-670, the procedural rule and the mechanic's lien statute may peaceably coexist, and we will therefore apply the rule in such proceedings.

b. *Relation back.* Because General Builders's counterclaim seeking to enforce its lien was not filed until after the expiration of the ninety-day time period in which to bring such an enforcement action, see G. L. c. 254, § 11, General Builders invokes the doctrine of "relation back" articulated in G. L. c. 260, § 36,[5] and argues that the timeliness of its action is to be computed as if it had been filed on the date that Golden's complaint was filed. Golden's complaint was filed prior to the expiration of the ninety-day period that would apply to General Builders's enforcement action and, argues General Builders, its later-filed counterclaim must therefore be deemed timely.

Application of the relation back doctrine to salvage untimely filed counterclaims for lien enforcement would be contrary to the terms of the mechanic's lien statute and would seriously undermine its operation. The statute does not simply set a limitations period for the filing of lien enforcement actions, but specifies the consequence of failing to bring an action within that time frame: "The lien *shall be dissolved* unless a civil action to enforce it is commenced within ninety days after the filing of the statement [of account]" (emphasis added). G. L. c. 254,

---

[4]By comparison, we found such a conflict between the statute governing summary process actions and the rules of procedure that would otherwise have given commercial tenants the right to bring counterclaims against their landlords. *Fafard* v. *Lincoln Pharmacy of Milford, Inc.,* 439 Mass. 512, 514-517 (2003). There, the statute itself addressed the issue of counterclaims, specifying that they could be brought by defendant tenants in actions seeking "to recover possession of any premises rented or leased *for dwelling purposes*" (emphasis added). G. L. c. 239, § 8A. Where the Legislature had expressly provided for counterclaims by residential tenants, but had included no comparable provision for counterclaims by tenants occupying commercial premises, the clear implication was that the Legislature did not intend to allow counterclaims by commercial tenants in summary process proceedings. *Id.* at 515. Here, the mechanic's lien statute is silent on the subject of counterclaims, and contains no suggestion of a legislative intent to preclude counterclaims or to preclude them in certain types of mechanic's lien proceedings.

[5]The statute provides in pertinent part: "The provisions of law relative to limitations of actions shall apply to a counterclaim by the defendant. The time of such limitation shall be computed as if an action had been commenced therefor at the time the plaintiff's action commenced." G. L. c. 260, § 36.

§ 11. Thus, as of the ninety-first day following the filing of General Builders's statement of account, there was no longer any lien left to enforce. It had, in the words of the statute, been "dissolved" by operation of law. The mechanic's lien statute does not permit the resurrection of a lien, or the creation of a new lien, once the lien has been extinguished by a failure to comply with the statute. See *Mullen Lumber Co.* v. *Lore*, 404 Mass. 750, 755-757 (1989). See also *Tremont Tower Condominium, LLC* v. *George B.H. Macomber Co.*, 436 Mass. 677, 684 & n.3 (2002). The mechanic's lien statute must be strictly construed against the party asserting the lien, *Ng Bros. Constr.* v. *Cranney*, *supra* at 644, and interpreting the statute in a manner allowing for reinstatement of a dissolved lien by later filing of a counterclaim "would effectively give the contractor a 'period greater' than that intended by the Legislature" in which to enforce the lien. *Tremont Tower Condominium, LLC* v. *George B.H. Macomber Co.*, *supra* at 684, quoting *Mullen Lumber Co.* v. *Lore*, *supra* at 756.

Once the August 27 deadline had come and gone with no action filed by General Builders, Golden was automatically entitled to the relief she sought in her complaint. At that juncture, it required no further action on Golden's part (or even any action by the court) to "discharge" the lien, as the lien had already "dissolved." It would be perverse to tell Golden that she could now be denied the relief to which she was previously entitled because, before the judge ruled on her request for relief, the very pendency of her request gave General Builders an opportunity to resurrect its lien by filing a counterclaim.

Allowing resurrection of the lien by the filing of a counterclaim after expiration of the ninety-day period would also wreak havoc with one of the statute's important purposes, namely, the provision of "an accurate system for recording and identifying encumbrances secured under the mechanic's lien statute." *National Lumber Co.* v. *LeFrancois Constr. Corp.*, *supra* at 669. The statute is intended to ensure "that an enforcement action may readily be identified through routine title searching procedures," *id.*, and it accomplishes that objective by requiring that an attested copy of the enforcement complaint be recorded

within thirty days of its filing with the court. G. L. c. 254, § 5.[6] Thus, if a title examiner finds recorded a notice of contract and a statement of account, but finds no complaint recorded within 120 days of the recorded statement, the examiner can conclude with certainty that the former mechanic's lien no longer encumbers the property. If, however, that lien could later be revived by way of a counterclaim relating back to a plaintiff's earlier filing, the examiner could no longer rely on the registry title search.[7] Indeed, given the court's broad discretion to allow extensions of time in which to file responsive pleadings (see Mass. R. Civ. P. 6 [b], 365 Mass. 747 [1974]), and the liberality of the rule governing amended and supplemental pleadings (Mass. R. Civ. P. 15, 365 Mass. 761 [1974]), it is possible for a counterclaim to be filed long after the plaintiff's commencement of the original action. The relation back doctrine, if applicable to lien enforcement claims, could thus operate to revive liens that, according to the record title, were long since dissolved. The certainty of the recording system as a means to confirm the status of mechanic's lien encumbrances would be greatly undermined by any such relation back.[8]

Where, as here, application of the otherwise customary rules of relation back would compromise one of the objectives of a

[6]Here, the judgment dismissing the counterclaim already had been entered prior to the expiration of the thirty-day period in which to file and record an attested copy at the registry of deeds. The record before us therefore does not reveal whether or when any copy was ever filed and recorded at the registry.

[7]The statute does not require the property owner to record anything at the registry with respect to an action to dissolve a mechanic's lien under G. L. c. 254, § 15A, nor is there a recording requirement for the other causes of action that an owner might ordinarily bring against a contractor or subcontractor (e.g., breach of contract or negligence). As such, there would be nothing on record to alert a title examiner to the fact that a property owner's own suit might have opened the door to a later counterclaim to enforce the mechanic's lien.

[8]By comparison, in *National Lumber Co.* v. *LeFrancois Constr. Corp.*, 430 Mass. 663, 671 (2000), this court determined that allowing relation back with respect to the addition of the new owner as a defendant in a mechanic's lien enforcement action would not impair the reliability of the recording system. See Mass. R. Civ. P. 15 (c), 365 Mass. 761 (1974). The recording of the original enforcement complaint would, by itself, be adequate to alert examiners to the present status of the mechanic's lien, and the later addition of a party would not impair an examiner's ability to confirm the presence or absence of that lien. *National Lumber Co.* v. *Le Francois Constr. Corp.*, supra at 669-670.

statutory scheme, relation back is not allowed. See, e.g., *Tindol* v. *Boston Hous. Auth.*, 396 Mass. 515, 518-519 (1986), quoting *James Ferrera & Sons* v. *Samuels*, 21 Mass. App. Ct. 170, 173 (1985) (rule 15 [c] could not be applied to amended pleading adding claim barred by G. L. c. 260, § 2B, statute of repose, as relation back "would have the effect of reactivating a cause of action that the Legislature obviously intended to eliminate"); *Bernstein* v. *Gramercy Mills, Inc.*, 16 Mass. App. Ct. 403, 407-410 (1983), and cases cited (counterclaim to vacate arbitration award did not relate back to plaintiff's filing of action to enforce award; allowing relation back provisions of G. L. c. 260, § 36, to enable late filing of action to vacate award would frustrate G. L. c. 251, which "aims to flush out objections to awards with dispatch"). The complex scheme of the mechanic's lien statute, and its carefully crafted provisions to protect the integrity and reliability of the recording system, would be sorely disrupted if we were to allow enforcement counterclaims to relate back to the date of filing of the property owner's complaint.

We therefore decline to apply G. L. c. 260, § 36, to General Builders's counterclaim, and will instead require that any counterclaims to enforce mechanic's liens be filed with the court and recorded at the registry of deeds within the time frames mandated by G. L. c. 254, §§ 5 and 11. Because General Builders failed to file its counterclaim within the ninety-day period prescribed by G. L. c. 254, § 11, its lien was dissolved. As such, the judge properly ordered the lien discharged and dismissed General Builders's counterclaim.[9]

*Judgment affirmed.*

---

[9]Because our ruling on the relation back issue renders the lien enforcement counterclaim untimely, it is not necessary for us to address any of the other grounds on which Golden sought to have the lien discharged.