Murphy, Ernest B., J.
The plaintiff, Philip Alan, Inc. (Philip Alan), moves, pursuant to G.L.c. 254, §15A, for dissolution of a lien in the amount of $171,427.85 recorded by defendant MSarcia Construction Services (MSarcia) against the property located at 104 Mt. Auburn Street, Cambridge, Massachusetts. The property at issue is owned by Eliot Square Enterprises, Inc., Trustee of Eliot Square Enterprises Trust (Eliot Square). For the reasons stated below, plaintiffs renewed application for dissolution is DENIED.

BACKGROUND

On or about September 27, 2004, Philip Alan accepted MSarcia’s bid to perform interior renovation at the Pyara Spa & Salon at 104 Mount Auburn Street, Cambridge, Massachusetts. At the time of contracting, MSarcia entered into the agreement as “MSarcia Construction Services, LLC,” although it was not a registered corporation. MSarcia would eventually incorporate as a limited liability corporation in Rhode Island on July 1, 2005.
Numerous problems arose at the beginning and during the actual refurnishing of the spa. The causes of these delays included (1) a requirement that union labor perform various subcontracting jobs before MS-arcia would be allowed back on the job, (2) the dismantling of floorboards already installed by MSarcia so that an electrical line could be run, (3) late changes in material selection inside the property, and (4) receipts of salon and spa equipment within the small work *706 space. MSarcia claims that these delays substantially increased its outlay costs for the project.
In or around Januaiy 2005, MSarcia made demand for past due payment on the project. On Januaiy 28, 2005, Philip Alan terminated its agreement with MS-arcia. The parties are in dispute as to the quality and extent of the work that was completed at the time of termination. Philip Alan has asserted a claim that MSarcia’s failure to complete the work in a timely manner has caused it extensive damages.
On April 7, 2005, MSarcia filed and recorded the lien at issue against the property at 104 Mt. Auburn Street, Cambridge, Massachusetts. Philip Alan now brings a renewed application to dissolve the lien.

DISCUSSION

G.L.c. 254, §15A grants this court the ability to dissolve a lien given certain circumstances, including situations where the recording party has “failed to comply with any provision of this chapter.’’ Philip Alan requests that this court discharge MSarcia’s lien because it has failed to comply with G.L.c. 254, §§2 and 11.
Phillip Alan argues first that because MSarcia existed as an unregistered corporation at the time of the contract, its attempt to enforce the lien at issue after being incorporated in Rhode Island following the agreement, fails under a strict interpretation of the Mechanic’s Lien Statute.[1] Specifically, Philip Alan relies on G.L.c. 254, §2, which states in pertinent part:
A person entering into a written contract with the owner of any interest in real property . . . for . . . improvement to real property . . . shall have a lien upon such real property, land, building, structure or improvement owned by the party with whom or on behalf of whom the contract was entered into, as appears of record on the date when notice of said contract is filed or recorded in the registry of deeds for the county or district where such land lies, to secure the payment of all labor, including construction management and general contractor services, and material or rental equipment, appliances, or tools which shall be furnished by virtue of said contract.
The plaintiff, citing the decision of Abbott v. Hapgood, 150 Mass. 248 (1889), claims that MSareia has not entered into a “written contract” and therefore, under §2 of G.L.c. 254, cannot record a lien on its property. Abbott does indeed state that, “If a contract is made in the name and for the benefit of a projected corporation, the corporation after its organization cannot become a parly to the contract, even by adoption or ratification by it.” Id. at 252.
While never renounced, Abbotts holding has been “gradually eviscerated”[2] and is the subject of criticism in Massachusetts and in other jurisdictions. In Holyoke Envelope Co. v. United States Envelope Co., Chief Justice Holmes, acknowledging the rule in Abbott, elucidated two theories upon which the new corporation could nonetheless be bound to the contract: (1) by treating the prior agreement as a continuing offer which the corporation accepts by receiving benefits from the agreement, or (2) by viewing the parties’ conduct following incorporation as an implied contract. 182 Mass. 171, 174-75 (1902). A decade later North Anson Lumber Co. v. Smith, while not citing the Holyoke Envelope decision, took advantage of Judge Holmes’ implied contract dicta and continued to narrow the scope of Abbottwhen it held that a corporation may be bound to a contract formed before its inception:
. . . this is a case where the defense is set up that the plaintiff corporation, after its organization, which was subsequent to the initial transaction, entered into such relations with the makers of the notes that a contract to assume the payment of their notes may be implied, and that other circumstances warrant the further inference that this implied contract has been executed.
209 Mass. 333, 337 (1911). See Also Framingham Savings Bank v. Szabo, 617 F.2d 897, 899 (1st Cir. 1980) (“Massachusetts appears willing to bind a corporation to the terms of a pre-incorporation contract, at least where the plaintiff obligee has already performed”); In re David’s & Unique Eatery, 82 B.R. 652, 655-56 (Bankr. D.Mass. 1987) (agreeing with Framing-ham Savings’s interpretation of Massachusetts Court’s preference for Holyoke Envelope's dicta over the rule in Abbott). Therefore, this court, following Holyoke Envelope, holds that the agreement survived under theories of both continuing offer and implied contract. 182 Mass. at 174-75.
Philip Alan attempts to stretch Abbotts holding even further, however, when it notes in its brief that MSarcia performed and it terminated the contract before MSarcia incorporated in Rhode Island. Therefore, MSarcia as a registered LLC can no longer be a party to the agreement.
The court has not been provided with case law suggesting that because MSarcia incorporated following its performance of the contract, Philip Alan is no longer bound under that original agreement. “It is well settled that a person or corporation may be known by different names, and contract accordingly, and that contracts so entered into will be valid and binding if unaffected by fraud.” General Motors Acceptance Corp. v. Haley, 329 Mass. 559, 566 (1952). The record does not reveal fraudulent actions on the part of MSarcia that would justify a ruling in Philip Alan’s favor on this issue.
In sum, the contract between MSarcia and Philip Alan satisfies the “written contract” requirement of G.L.c. 254, §2. This court therefore declines to use the power granted to it by G.L.c. 254, § 15A to dissolve the lien on this argument.
*707 Philip Alan has also made the separate and distinct claim that the lien should be dissolved because the statement of account filed by MSarcia was knowingly and willfully inaccurate. G.L.c. 254, §11 states, in pertinent part:
The validity of the lien shall not be affected ... by an inaccuracy in stating the amount due for labor or material unless it is shown that the person filing the statement has wilfully and knowingly claimed more than is due him.
Philip Alan has produced the affidavit of Christine Perkins (Perkins), president of Philip Alan, in support of its claim. Perkins avers that the actual amount of the contract was $322,900.00 rather than the $346,100.00 which MSarcia entered in the Statement of Account. A September 27, 2004 letter from MSarcia, included in the record, indicates that the $346,100.00 figure represents the total amount of the contract including all alternate work. No conflicting documentation, other than Perkins’ affidavit, is offered by Philip Alan.
Perkins’ affidavit also claims that Philip Alan did not assent to change orders during the project, and cite MSarcia’s December 13, 2004 application for payment that states “NET CHANGES by Change Order: $0.00" for support. Plaintiff claims that the entered amount of $35,717.85 in change orders on the Statement of Account is therefore knowingly false. MSarcia counters this argument by submitting in its opposition to Philip Alan’s motion for dissolution a change order worksheet itemizing $81,717.85 in additional costs. The affidavit of Michael Sarcia, President of MSarcia, is also offered and avers that the amount in the Statement of Account is accurate.
Given these conflicting accounts, it is difficult to say whether Msarcia’s Statement of Account is correct or inaccurate. What is clear, and more importantly what is relevant to the instant Motion, is that this court has not been persuaded on the summary judgment record that any putative inaccuracies were “knowingly and willfully” entered into the Statement of Account by MSarcia.

ORDER

For the reasons stated above, the plaintiffs renewed application for dissolution of defendant’s lien is DENIED.

 “Because a mechanic’s lien is purely a creation of statute, we have consistently required exact compliance with the statute in order to create, perfect, and enforce such a lien.” Golden v. General Builders Supply, LLC, 441 Mass. 652, 654 (2004), citing Ng. Bros. Constr. v. Crarmey, 436 Mass. 638, 642, 644 (2002); National Lumber Co. v. LeFrancois Constr. Corp., 430 Mass. 663, 666 (2000); East Coast Steel Erectors, Inc. v. Cioifi, 417 Mass. 602, 605 (1994); Mullen Lumber Co. v. Lore, 404 Mass. 750, 752 (1989). ‘The [mechanic's lien] statute is strictly construed against the party claiming the lien.” Ng Bros. Constr, 436 Mass. at 644.

Copp v. Hague, 1994 WL 69563 (Mass.App.Div. 1994).