JOHN MARINI MANAGEMENT COMPANY *vs.* JOSEPH G. BUTLER, trustee in bankruptcy.[1]

No. 05-P-735.

Norfolk. April 10, 2007. - September 17, 2007.

Present: McHUGH, DREBEN, & KAFKER, JJ.

*Mechanic's Lien. Conversion.*

This court declined to consider whether a subcontractor's failure to file an enforcement action as a compulsory counterclaim in an action to dissolve a mechanic's lien rendered moot the subcontractor's appeal from the dissolution of the mechanic's lien, where a Federal bankruptcy court had jurisdiction over a separate enforcement action that the subcontractor had filed within ninety days after the filing of a statement of amount due in connection with the filing of the mechanic's lien, and then removed. [145-146]

A Superior Court judge erred in ordering a mechanic's lien dissolved, where a Federal bankruptcy court retained jurisdiction over an action to enforce the lien that the subcontractor had filed and then removed, and where the judge had not ordered the discharge only for defects that appeared of record or were readily ascertainable by reference to undisputed documents. [146-149]

In an action to dissolve a mechanic's lien, the judge properly discharged those portions of the lien relating to a claim for conversion and damage to concrete forms and other property, where the property did not consist of materials physically incorporated into a completed structure, or of materials consumed or made so worthless as to lose their identity, and where G. L. c. 254, § 4, protected only the value of the use of such equipment during the process of construction. [149-153]

CIVIL ACTION commenced in the Superior Court Department on February 11, 2005.

The case was heard by *Isaac Borenstein*, J.

*Paul S. Samson* for the defendant.

*Edmund A. Allcock* for the plaintiff.

---

[1] The action was brought against C.R. Stone Concrete Contractors, Inc. (Stone). In this appeal, Stone's trustee in bankruptcy has been substituted in its place. For convenience, however, we refer to the defendant as Stone in this opinion.

DREBEN, J. When John Marini Management Company (Marini), the general contractor for a condominium project, became aware that suppliers and subcontractors of C.R. Stone Concrete Contractors, Inc. (Stone), the subcontractor for construction of a concrete parking garage, had not been paid, Marini terminated Stone's contract effective January 11, 2005. Ten days later, Stone filed the documents necessary to obtain a mechanic's lien — a "notice of contract" and "statement of amount due." See G. L. c. 254, §§ 4, 8. On February 11, 2005, Marini filed an action for dissolution of the lien in Superior Court, and before us is Stone's appeal from the summary dissolution of its lien. We reverse the judgment except insofar as it dissolves portions of the lien relating to the claim for conversion and damage to Stone's property.

Although Stone filed a bankruptcy petition on February 18, 2005, which had the effect of staying the action in Superior Court, see 11 U.S.C. § 362 (2000), the Federal bankruptcy court, on March 23, 2005, "lifted" the automatic stay provisions "for the limited purpose of allowing Marini to continue the proceeding to dissolve the mechanic's lien pursuant to [G. L. c.] 254, § 15A, now pending" in the Superior Court. At oral argument in the bankruptcy court, the judge specifically stated with respect to the issue of the mechanic's lien, "I am not talking about the dispute between the parties on who owes what to whom." While the bankruptcy judge's written order, prepared by Marini's counsel, does not spell out the limits of the lifting of the stay, the intent of the bankruptcy judge, in our view, was to have the State court determine in a summary proceeding whether apparent defects existed to affect the validity of the lien under State law, but not to determine such questions as what was an agreed change order or what was properly paid by Marini.[2] Those questions would involve "who owes what to whom."

One of the main issues to be decided by the Superior Court was whether the mechanic's lien covered concrete forms and

---

[2]At the hearing in the bankruptcy court it also became apparent that Stone was asserting, through its counsel, claims far beyond the contract, namely, that Marini and two others damaged Stone's business in concert with Stone's project manager, who left Stone's employ, taking with her a computer and a box of documents and leaving Stone's paperwork in shambles. These claims were spelled out in an affidavit of Christopher R. Stone, Stone's president, filed in the Superior Court after the lifting of the automatic stay.

other materials belonging to Stone and retained by Marini. Marini contended, and still contends, that this matter represents a claim for conversion and not a claim which is protectable by a mechanic's lien. The bankruptcy judge ordered Marini to return the materials, noting, "And it's possible, as [Marini's counsel] says, this narrow issue of Massachusetts law [the mechanic's lien issue] will go away once the equipment is returned which I have directed to be returned . . . ."

A hearing on Marini's motion to dissolve the lien was held in Superior Court on April 5, 2005. Affidavits and other materials were filed, including an affidavit of Christopher R. Stone, Stone's president. That affidavit asserted, inter alia, that while some of Stone's property was returned, not all was, and that many of the items brought back were badly damaged.[3] The judge, without taking testimony and without making findings, entered an order allowing Marini's motion on the day of the hearing. On April 8, 2005, counsel for Marini hand-delivered to the Superior Court a proposed judgment and order dissolving the mechanic's lien. The judge entered judgment, in the form proposed, on April 11, 2005, without a hearing. The main portion of the judgment dissolving the lien stated:

> "[T]his Court . . . hereby enters Judgment in favor of [Marini] on Counts I and II[4] and Prayers 1 and 2 of the Complaint . . . ."

Those prayers were that the court:

> "(1) issue an Order declaring that no valid lien exists as [Stone] has willfully and knowingly claimed more than is due from [Marini], included claims unrelated to the written contract between the parties and ignored its own material breach of the Subcontract; [and]

> "(2) issue an Order pursuant to [G. L. c.] 254, § 15A dissolving the lien."

---

[3]When Stone subsequently brought an action to enforce the lien, discussed later in this opinion, it reduced to $462,500 its original claim of $800,000 for the materials retained.

[4]Count I sought a declaratory judgment and count II was titled "Dissolution of Lien under [G. L. c.] 254, § 15A and § 11."

1. *Marini's argument that Stone's appeal is moot for failure to file a compulsory counterclaim.* Unless an enforcement action is brought in the Superior Court within ninety days after the filing of the statement of amount required by G. L. c. 254, § 8, the lien is dissolved. G. L. c. 254, § 11. Marini claims that Stone's appeal has been rendered moot by its failure to file such an enforcement action as a compulsory counterclaim in Marini's action to dissolve the lien. Relying on dictum in *Golden* v. *General Builders Supply LLC*, 441 Mass. 652 (2004),[5] Marini urges us to dismiss the appeal. We decline to decide whether the counterclaim is a compulsory one as, in any event, dismissal is not appropriate in this case.

As indicated earlier, § 11 provides: "The lien shall be dissolved unless a civil action to enforce it is commenced within ninety days after the filing of the statement required by section eight." G. L. c. 254, § 11, as amended through St. 1996, c. 364, § 11. After entry of the judgment dissolving the lien, but within the ninety-day period, Stone filed an enforcement action in the Superior Court in an effort to protect its rights in the event that the judgment were reversed on appeal. (General Laws c. 254, § 5, requires that the action be brought in the Superior Court in the county in which the land lies.) Stone then removed the enforcement action to the bankruptcy court.

Marini filed an emergency motion in the bankruptcy court to remand Stone's enforcement action to the Superior Court, arguing, inter alia, that the case involves questions of State law and that "the issue of whether the Enforcement Action was barred because of [Stone's] failure to assert a counterclaim to the complaint to dissolve will be a significant issue in the Enforcement Action." The bankruptcy judge denied the motion, saying that although the litigation on appeal (the validity of the mechanic's lien)

"has an impact upon the broader fight between the parties,

---

[5]In dictum the court stated that "it may well be that a mechanic's lien enforcement action would qualify as a compulsory counterclaim that must be asserted in the property owner's action seeking to discharge that same lien." *Golden* v. *General Builders Supply LLC*, 441 Mass. at 655 n.3. The court did not consider the situation, as here, where the dissolution occurred prior to the expiration of the ninety days. It also did not consider the effect of orders in a bankruptcy proceeding filed by the lienholder.

. . . the question is, who's going to have to mediate or decide that broader fight between the parties? I think it so affects my case that I have to hang onto it. If I find I've got state court problems, I'll cope with them when I go forward."

The issue urged by Marini has thus been retained by the bankruptcy court, and we do not consider it necessary or appropriate for us to decide it.

2. *The dissolution of the lien.* Under G. L. c. 254, § 15A, a contractor, among other "person[s] in interest," who claims that there is no valid lien because, inter alia,

"(*b*) it appears from the notice of contract or a statement of account that the claimant has no valid lien by reason of the character of, or the contract for, the labor or materials or rental equipment, appliances or tools furnished and for which a lien is claimed, . . . or (*d*) that for any other reason a claimed lien is invalid by reason of failure to comply with any provision of this chapter, or (*e*) that any party's rights are foreclosed by a judgment or release . . ."

is permitted to "apply to the superior court for the county where such land lies . . . for an order (i) ruling on the matter involved or (ii) summarily discharging of record the alleged lien . . . ." *Ibid.*, inserted by St. 1996, c. 364, § 15.

Section 11 of G. L. c. 254 provides in pertinent part:

"The validity of the lien shall not be affected . . . by an inaccuracy in stating the amount due for labor or material unless it is shown that the person filing the statement has wilfully and knowingly claimed more than is due him."

Marini claims that Stone wilfully and knowingly claimed more than what was due, and urges affirmance of the judgment dissolving the lien because § 11 is encompassed by § 15A(*d*). While in some cases it may be possible to determine invalidity summarily under § 11, in this case the affidavits and supporting documents submitted to the Superior Court judge do not permit a summary determination or one consistent with the bankruptcy court's remand. In *Golden* v. *General Builders Supply LLC*, 441 Mass. at 656-657, the court explained the scope of the summary procedure under § 15A:

"The types of defects that can result in an order 'summarily discharging' the lien under G. L. c. 254, § 15A, are normally amenable to immediate determination on undisputed documents and matters of public record. A lien can be 'summarily' discharged under that section if 'it appears from the notice of contract or a statement of account that the claimant has no valid lien by reason of the character of, or the contract for, the labor or materials or rental equipment, appliances or tools furnished and for which a lien is claimed,' if the requisite notices and statements have not been timely filed and recorded, if there has been any other failure to comply with the statute that would invalidate the lien, or if the lien rights 'are foreclosed by judgment or release.' *Id. In other words, summary discharge of the lien can only be obtained for defects that will customarily appear of record or be readily ascertainable by reference to undisputed documents — defects in the notice of contract or statement of account, failure to timely record the notice or statement, or a judgment or release that would preclude the lien*" (emphasis supplied).

The affidavits filed on behalf of both Marini and Stone indicate that the validity of the lien as to items other than the concrete forms (originally based on a claim for conversion and now also a claim for damages to the returned property) relate to whether Stone is entitled to any additional payment and whether it, in the words of § 11, "wilfully and knowingly claimed more than is due." Those issues involve both questions of credibility and questions of "who owes what to whom," a matter retained by the bankruptcy court.

We first look at Stone's original "statement of amount due" (G. L. c. 254, § 8) filed at the registry of deeds on January 21, 2005. It stated in relevant part:

| | |
|---|---|
| "1. Contract price | $2,350,000.00 |
| "2. Agreed change orders | $48,000.00 |
| "3. Pending change orders | $83,051.80 |
| "4. Disputed claims and extras[6] | $800,000.00 |
| "5. Payments received | $1,958,000.36 |

[6]This is the item that represents the concrete forms and other material that Stone alleged was wrongfully retained by Marini.

"Balance claimed due                    $1,323,050.64"

In its verified complaint Marini stated, inter alia, that contrary to lien waivers (a November 19, 2004, waiver was attached to Marini's complaint) in which Stone represented that all of its suppliers had been paid, a number of them had not been paid, and Marini had been obliged to pay them either because they asserted or would have asserted liens; that in the lien waiver Stone acknowledged that it had been paid $1,965,143.65 (i.e., several thousand dollars more than Stone credited Marini with on Stone's statement of amount due), and that Stone has, in fact, been paid $2,006,365.36; that Marini paid $297,395.20 to Stone's subcontractors to avoid delay and placement of mechanic's liens; that the change orders were never agreed upon or even forwarded to Marini, and some of them were generated prior to the date of the November, 2004, lien waiver; that the $800,000 figure for the forms and other material was an arbitrary figure and that, as Marini made more explicit in the bankruptcy court, the claim was for conversion and not protectable by a mechanic's lien. In sum, Marini's complaint stated that the sums paid by it to Stone and to Stone's unpaid suppliers exceeded the total of the subcontract price and that Stone was not entitled to a lien. In addition, Marini claimed that the lien was invalid pursuant to G. L. c. 254, § 11, as Stone "wilfully and knowingly claimed more than is due."

At the lien dissolution hearing in Superior Court, three affidavits were filed on behalf of Marini: an affidavit with attachments by Robert Kelliher, the construction manager or supervisor of the project; one by Paul Martin, a construction project manager who oversaw the return to Stone of its materials; and a third by John S. Marini, the president and principal of Marini. Christopher R. Stone (Christopher), Stone's president, filed an affidavit on behalf of Stone. He acknowledged the receipt of the amount claimed by Marini in the latter's complaint and stated that he would amend the "statement of amount due" and would also amend it to reflect the return of some of the property. He claimed that Marini had requested and agreed to the change orders; that it was the responsibility of one Gillian Welby, Stone's project manager, to process the change orders; and that there

were change orders on her computer "which had not been processed by her, apparently due to her plan to leave CR Stone." Christopher claimed that the release of lien of November 19, 2004, was a forgery even though it purported to be notarized by Welby. He also stated that the alleged payments by Marini to subcontractors "amount to less than 15% of the value of the job" and, therefore, "there is ample money left in the contract to pay [Stone]." As to several subcontractors who Marini claimed were not paid, Christopher challenged many of Marini's contentions.[7] We need not describe more fully Stone's rejections of Marini's claims as it is evident that the issues involve credibility and determinations of "who owes what to whom." The summary discharge of the lien by the Superior Court was in error as it was not ordered "only . . . for defects that . . . appear of record or [are] readily ascertainable by reference to undisputed documents." *Golden* v. *General Builders Supply LLC*, 441 Mass. at 657.

3. *Claim for conversion and damage to property.* Stone originally argued that the entire value of the concrete forms and other items retained by Marini were covered by its mechanic's lien. As pointed out earlier, after the items were returned pursuant to the order of the bankruptcy court, Christopher asserted in his affidavit that not all of the property was returned and much of it was damaged. Stone contends that instead of the original figure of $800,000, it is entitled to a lien of $462,500,[8] as "disputed claims and extras," to reflect the value of the missing items and the damage allegedly caused by Marini to the returned materials.

Contrary to Stone's contention, the claims for missing or damaged items are not protected under G. L. c. 254. As pointed

---

[7]As examples, Christopher asserted, contrary to Marini's position, that Stone was current with Lampasona Concrete, that the amounts due were for requisitions to Marini that were unpaid, and that the bulk of Lampasona Concrete's balance was based on two invoices dated December 28, 2004, which were not even due and payable when Marini terminated Stone; as to Barker Steel, Stone attached an acknowledgment by Barker Steel that it was paid in full for all work invoiced through December 31, 2004; as to a claim of Geotechnical Consultants, Inc., Christopher contended that Marini, rather than Stone, was liable for the claim.

[8]In its brief in this court, Stone claims $400,000 for the unreturned or damaged materials, and $62,500 for a three-month rental value of its property.

out in *National Lumber Co.* v. *United Cas. & Sur. Ins. Co.*, 440
Mass. 723, 726 (2004),

> "A mechanic's lien is a statutory creation, and can be en-
> forced only by strict compliance with the statute. General
> Laws c. 254 governs the creation, perfection, and dissolu-
> tion of a mechanic's lien and 'is strictly construed against
> the party claiming the lien.'" (Citations omitted.)

Section 4 of G. L. c. 254, the first two paragraphs of which are
reproduced in the margin,[9] sets forth what a subcontractor's
mechanic's lien may cover. Our cases make clear that notwith-
standing contractual obligations, only what is specified in the
statute is protected by a lien. Thus in *National Lumber Co.*, *su-
pra*, the court held that under a contract that provided that the
owner would pay the contractor interest on any amount remain-
ing unpaid and reasonable charges of collection including at-
torney's fees, the contractor's mechanic's lien did not include
those items, but only included the amount claimed for labor and
materials.[10] As the court pointed out,

> "The primary purpose of the lien is to provide security
> to contractors, subcontractors, laborers, and suppliers for

---

[9] General Laws c. 254, § 4, as appearing in St. 1996, c. 364, § 5, states in
part:

> "Whoever furnishes labor, including subcontractor construction
> management services, or who furnishes material, or both labor and mate-
> rial, or furnishes rental equipment, appliances or tools, under a written
> contract with a contractor, or with a subcontractor of such contractor,
> may file or record in the registry of deeds for the county or district where
> such land lies a notice of his contract substantially in the following form:

> "Notice is hereby given that by virtue of a written contract dated
> _____, between _____ contractor (or subcontractor) and _____ said
> _____ is to furnish or has furnished labor or material, or both labor
> and material, or is to furnish or has furnished rental equipment, appli-
> ances or tools, in the erection, alteration, repair or removal of a build-
> ing, structure or other improvement of real property by _____, contrac-
> tor, for _____, owner, on a lot of land or other interest in real property
> described as follows . . . ."

[10] The *National Lumber Co.* case was governed by the statutory language in
effect before the revision of G. L. c. 254 by St. 1996, c. 364. See 440 Mass. at
724 n.4. We have no doubt that the result would be the same under the current
statute. See note 9, *supra*.

the value of their services and goods provided for improving the owner's real estate."

*Id.* at 726, quoting from *Hammill-McCormick Assocs., Inc.* v. *New England Tel. & Tel. Co.*, 399 Mass. 541, 542-543 (1987).

Chapter 254 formerly limited mechanic's liens to materials physically incorporated into the completed structure,[11] or to materials "consumed or made so worthless as to lose their identity." *American Casting Co.* v. *Commonwealth*, 274 Mass. 1, 6 (1931).[12] See *International Heating & Air Conditioning Corp.* v. *Rich Constr. Co.*, 372 Mass. 134, 136-137 (1977). The coverage under § 4 was broadened in 1996 to include, inter alia, the furnishing of "rental equipment, appliances or tools, under a written contract with a contractor." (See note 9, *supra.*) The form of notice of contract needed to establish the lien set forth in § 4, providing that further steps are followed, requires that such furnishing be "in the erection, alteration, repair or removal of a building, structure or other improvement of real property." In *Mammoet USA, Inc.* v. *Entergy Nuclear Generation Co.*, 64 Mass. App. Ct. 37, 43 (2005), we interpreted "improvement of real property" in light of the words which preceded it and the purpose of the mechanic's lien law and concluded that "something is not an improvement unless it is itself, in whole or in part, constructed or assembled in connection with a building or structure or other construction-related

---

[11]See, e.g., under prior law, *Kennedy* v. *Commonwealth*, 182 Mass. 480, 481-482 (1903) (lumber not incorporated into pumping station and gate house, but used for purpose of constructing forms to hold concrete in place while it hardened, not covered by lien). See also *International Heating & Air Conditioning Corp.* v. *Rich Constr. Co.*, 372 Mass. 134, 139 (1977), involving a surety bond (which is given a more liberal construction than a mechanic's lien, *id.* at 138), where the court held that although it has continued to insist that materials be physically incorporated in the construction work, it "would be anomalous if the subsequent failure of the contractor to install them were retroactively to render the supplier's claim untimely." The supplier's claim under the bond was upheld.

[12]Compare *George H. Sampson Co.* v. *Commonwealth*, 202 Mass. 326, 336 (1909), which, under the law prior to 1922, indicated that the "use of tools and machines which wear out in the use does not give a right to a lien for their value as materials." The court, however, allowed the lien for gunpowder that was entirely consumed after being "used directly upon the work or the structure in process of construction, for the purpose of bringing it into proper form or condition." *Id.* at 333.

project." Thus, a subcontractor hired to transport a transformer, "a large (twelve feet wide by twenty-one feet long by twenty-two feet high) and extremely heavy (376 tons) steel box that is essential to the operation of the power plant," from a power plant in Connecticut via truck and barge to the Pilgrim Nuclear Power Station in Plymouth and set it on a pad, was not entitled to a mechanic's lien. *Id.* at 38-39. "Improvement" in its statutory context and in light of the lien statute did "not include the transportation functions [of the subcontractor]" and did not extend "to any work or process that somehow 'improve[s] the value of . . . [the owner's] property.' " *Id.* at 43.

Stone argues that since it has a lien upon the real property of the owner "to secure the payment of all labor and material and rental equipment, appliances or tools which [it] . . . has furnished for the building or structure," G. L. c. 254, § 4, the claims for damages and conversion are covered. The statutory context in which the new phrase "or furnishes rental equipment, appliances or tools" is placed, and the requirement that these items, as well as labor and material, be furnished under a written contract, indicate that the lien does not cover the total value of the rental equipment (here the concrete forms), appliances or tools furnished where, under the contract, the equipment is intended to be returned to the subcontractor to be used in other projects. Rather, the lien is intended to protect the value of the use of such equipment during the process of construction. Typically, that value is the fair rental value of the equipment for the time it is used in the construction process.

In addition, and most significant, the statute contains no suggestion that mechanic's liens are intended to cover wrongful use or retention of property or negligently inflicted damage. Although we have found little authority (and have been cited to none), the few cases we have found are mostly in the bond context, where a more liberal interpretation is usually permitted. In the bond cases the courts have held that the bond does not cover damage incurred by negligence. A rare lien case is *Browning* v. *Griffin*, 140 Idaho 598, 600 (Ct. App. 2004), where a mechanic's lien was held not to be available for a claim for "equipment stolen or vandalized" (moreover, in that case the equipment was neither located on Browning's property nor used for its improvement). Among the

bond cases, see *Gerosa Crane Serv., Inc.* v. *International Prod., Ltd.,* 70 Misc. 2d 176, 177 (N.Y. Civ. Ct. 1972), holding that a bond did not cover negligently inflicted damage to the lessor's crane. Cases under the Miller Act, 40 U.S.C. § 270a(a) (2000), which requires a payment bond "for the protection of all persons supplying labor and material in the prosecution of . . . work" on a Federal construction project, are in accord. They hold that the bond, which is to be liberally construed, does not cover damage caused by negligence to the equipment furnished. See *United States ex rel. Rent It Co.* v. *Aetna Cas. & Sur. Co.,* 988 F.2d 88, 90 (10th Cir. 1993); *United States for Use & Benefit of Coken* v. *Di Sandro,* 88 F. Supp. 970 (D. Conn. 1949); *United States ex rel. Crowder* v. *Fidelity & Deposit Co. of Md.,* 144 F. Supp. 322, 329 (W.D. La. 1956).

We thus conclude that other than the rental value of the concrete forms and other items which were apparently used in the project's construction after the termination of Stone,[13] the mechanic's lien does not cover the value of Stone's property which was damaged or not returned.

4. *Conclusion.* Since Stone has conceded that it has received the payments claimed to have been made by Marini, the lien must be reduced to reflect those amounts. It must also be reduced by $400,000 (see note 8, *supra*), and by any additional amounts agreed to by the parties. Accordingly, the judgment is reversed and the matter is remanded to the Superior Court to enter a judgment in accordance with this opinion.

*So ordered.*

---

[13]We express no opinion as to the amount, if any, to which Stone is entitled as rent.