MADLYN A. FAFARD & another,[1] trustees,[2] *vs.* LINCOLN
PHARMACY OF MILFORD, INC., & another.[3]

Worcester. April 10, 2003. - June 4, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Summary Process. Real Property,* Lease. *Contract,* Lease of real estate.
*Landlord and Tenant,* Dependence of obligations. *Practice, Civil,* Counter-
claim and cross-claim.

This court concluded that a counterclaim could not be filed in a commercial
summary process action, where G. L. c. 239, § 8A, which explicitly limited
a tenant's right to bring a counterclaim to premises "rented or leased for
dwelling purposes," was clearly applicable only to summary process ac-
tions in residential cases, and where this court's decision in *Wesson* v. *Le-
one Enters., Inc.,* 437 Mass. 708 (2002), adopting the rule of mutually
dependent covenants for commercial leases, did not change the outcome in
this case. [514-518]

SUMMARY PROCESS. Complaint filed in the Westborough Divi-
sion of the District Court Department on June 2, 1992.

On transfer to the Superior Court Department, the case was
heard by *Daniel F. Toomey,* J., and motions for amendment of
judgment were heard by him.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Jeffrey D. Williams* for the defendants.
*Marshall F. Newman* for the plaintiffs.

IRELAND, J., We transferred this case here on our own motion
to decide whether a counterclaim may be filed in a commercial
summary process action, particularly given the adoption of the
rule of mutually dependant covenants in commercial leases. See
*Wesson* v. *Leone Enters., Inc.,* 437 Mass. 708 (2002). Because
we agree with the trial judge's determination that a counterclaim

---

[1] Richard E. Terrill.
[2] Of Lyman Realty Trust.
[3] Richard Aronovitz, doing business as Lincoln Pharmacy.

is not a proper procedural device in a commercial summary process action, we affirm the judgment entered in the Superior Court.

I. *Background.*

We take our facts from the judge's memorandum of decision supplemented by undisputed facts in the record. In October, 1983, the defendant tenant entered into a one-year commercial lease for a building located at 161 Milk Street in Westborough. The building was owned by the plaintiff landlord's predecessor in interest, referred to herein as the lessor. Some of the sections in the lease had the word "DELETE" stamped over the text, including several provisions on the payment of real estate taxes. The tenant paid the real estate taxes for the first half of fiscal year 1984, but refused to pay subsequent tax bills. The Superior Court judge found that the parties did not contemplate that the tenant would be obligated to pay real estate taxes. The lease also contained a purchase and sale agreement by which the tenant obtained an option to buy the leased premises. Pursuant to this agreement, the tenant paid the lessor a deposit in 1983, and contributed money for the construction of an access road from the leased building to Route 9, in 1984.

On November 29, 1984, the tenant gave timely notice of its exercise of the option to purchase. Although the lessor rejected the tenant's exercise of the option, the tenant remained in possession of the premises as a tenant at will after the lease expired. From this time until April, 1990, the tenant continued to pay rent as provided under the terms of the written lease. By a deed dated April 27, 1990, the lessor conveyed the leased property to the plaintiff landlord, whom the judge found assumed the lessor's liabilities and entitlements.

The tenant did not make any rental payments after April, 1990. In May, 1992, the landlord served a notice to quit for failure to pay rent. The landlord filed a summary process complaint in the District Court in June, 1992, seeking both possession and rent.[4] The tenant responded with an answer and a counterclaim, contending that the landlord owed the tenant money. The tenant's counterclaim included sums for, among

---

[4] It appears that the landlord also sought real estate taxes for the period that it owned the premises.

other things, various improvements to the property, certain items of personalty purchased at an auction, the real estate tax bill paid, and expenditures pursuant to the purchase and sale agreement. On October 15, 1992, the tenant vacated the premises. Subsequently, a judge in the District Court ordered the tenant to pay $8,100, which represented rent owed from April, 1990, through October, 1992, reduced by sums paid by the tenant on certain improvements, real estate taxes, and the deposit on the option to purchase.

The landlord appealed from the judgment of the District Court, and in January, 1993, the matter was removed to the Superior Court for a trial de novo. During the jury-waived trial in the Superior Court, the judge, at the parties' suggestion, accepted evidence on the tenant's counterclaim, with the understanding that he would later rule on the landlord's objection that counterclaims are unauthorized in commercial summary process actions. The judge ultimately agreed with the landlord, and dismissed the tenant's counterclaim in a written order with no discussion of the merits. He ordered that judgment enter in favor of the landlord on the rent claim in the amount of $82,741.41, with no reduction or offset for any of the items in the tenant's dismissed counterclaim. The tenant filed motions for amendment of judgment under Mass. R. Civ. P. 52 (b), as amended, 423 Mass. 1402 (1996), and Mass. R. Civ. P. 59 (e), 365 Mass. 827 (1974), both of which were denied by the judge. The tenant appeals from the judgment of the Superior Court, and the denial of its motions for amendment.

II. *Discussion.*

The tenant argues that the judge erred in concluding that a tenant may not file a counterclaim in a commercial summary process action. In particular, the tenant contends that: there is nothing in the statutory scheme that prohibits the use of counterclaims in the context of a commercial summary process action; Mass. R. Civ. P. 18 (a), 365 Mass. 764 (1974), allows a party to join "as many claims . . . as he has against an opposing party"; counterclaims arising from the breach of a mutually dependant covenant contained in a lease agreement should be permitted in commercial summary process actions; and the interests of judicial economy support a decision on the merits of the tenant's counterclaims. We conclude that there was no error.

"Summary process is a purely statutory procedure and can be maintained only in the instances specifically provided for in the statute." *Cummings* v. *Wajda*, 325 Mass. 242, 243 (1950). General Laws c. 239, § 8A, which creates a right to file counterclaims in summary process proceedings, states in pertinent part, "[i]n any action under this chapter to recover possession of any premises rented or leased *for dwelling purposes*, brought pursuant to a notice to quit for nonpayment of rent . . . the tenant or occupant shall be entitled to raise, by defense or counterclaim, any claim against the plaintiff . . ." (emphasis added). Because a tenant's right to bring a counterclaim is explicitly limited in § 8A to premises "rented or leased for dwelling purposes," it is clear that it applies only to summary process actions in residential cases. Had the Legislature intended § 8A to allow tenant counterclaims in both residential and commercial summary process proceedings, it could have included words to that effect, or omitted the words, "for dwelling purposes." "We will not add words to a statute that the Legislature did not put there, either by inadvertent omission or by design." *Commonwealth* v. *McLeod*, 437 Mass. 286, 294 (2002), and cases cited. Similarly, we will give effect to all words included in a statute. *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 190-191 (1976), and cases cited.

We reject the tenant's argument that § 8A does not explicitly prohibit counterclaims in commercial actions. The Superior Court judge correctly reasoned that the establishment of a tenant's right to bring a counterclaim in residential actions "is persuasive that the Legislature meant to reject the right" in commercial proceedings. See *Brady* v. *Brady*, 380 Mass. 480, 484 (1980), quoting *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.*, 368 Mass. 425, 432 (1975) (recognizing maxim that "a statutory expression of one thing is an implied exclusion of other things omitted from the statute"). Because we conclude that the summary process statute precludes counterclaims in commercial actions, it is inappropriate to turn to the Massachusetts Rules of Civil Procedure, as the tenant suggests. See Rule 1 of the Uniform Summary Process Rules (2003) (procedures "not prescribed by these rules shall be

governed by the Massachusetts Rules of Civil Procedure insofar as [they] are not inconsistent with . . . applicable statutory law").

Our recent decision in *Wesson* v. *Leone Enters., Inc.*, 437 Mass. 708 (2002), adopting the rule of mutually dependent covenants for commercial leases, does not change the outcome in this case. The tenant did not terminate the lease or withhold rent in response to any failure by the landlord, after notice, to perform a promise significant to the lease. Cf. *id.* at 721-722 (commercial tenant had right to terminate lease when landlord, after notice, failed adequately to maintain roof). See Restatement (Second) of Property (Landlord and Tenant) § 7.1 (1977). In this case, the tenant does not dispute the amount of rent owed to the landlord, nor does it argue that the rental value of the property decreased as a result of the landlord's actions. Rather, the tenant posits that it is entitled to pursue a counterclaim to offset the landlord's claim for rent. As the tenant contends in its original brief, the counterclaim represents "a separate claim which arose out of the same transaction or occurrence as did the [landlord's] claim." See *George D. Emerson Co.* v. *Daley Foam Prods., Inc.*, 17 Mass. App. Ct. 934, 934 (1983) ("claim that the plaintiff broke an alleged contract to sell the premises to the defendant is, by its nature, not a defense to the claim for rent but is a separate claim"). The tenant now attempts to mold its counterclaim to the *Wesson* model by arguing that the lessor's rejection of the option to purchase in 1984 constitutes a failure "to perform a valid promise contained in the lease" which deprived the tenant "of a significant inducement to the making of the lease." *Wesson* v. *Leone Enters., Inc.*, *supra* at 720, quoting Restatement (Second) of Property (Landlord and Tenant), *supra* at § 7.1. Even if this were true, it does not justify withholding rent. The tenant waited more than five years after the alleged breach before taking any action, and waited until after the property was transferred to a third party.[5]

We agree with the tenant that in situations such as this, when

[5]The tenant also suggests that the lessor's alleged breach of the option to purchase justified the tenant's terminating the lease. This argument is particularly disingenuous given that the tenant vacated the premises eight years after the option to purchase was rejected and only after it had been

the dispute over possession has been resolved and the only remaining issue is how much rent is owed, it is in the interest of judicial economy to address related issues in a single proceeding. However, the statutory scheme does not allow counterclaims in commercial summary process actions, and we are not at liberty to amend the statute. See *Commonwealth* v. *Jones*, 417 Mass. 661, 664 (1994) ("If the law is to be changed, the change can only be made by the Legislature"). The proper procedure for a defendant in such a situation is to file a separate claim, and move to consolidate the actions. If appropriate, the judge may then allow consolidation of the claims. See, e.g., *Holmes Realty Trust* v. *Granite City Storage Co.*, 25 Mass. App. Ct. 272, 279 (1988) (ordering consolidation of landlord's summary process action and tenant's breach of contract action when the actions were "intertwined" and landlord would not be prejudiced by any resulting delays). There is not a right to file a counterclaim, but rather a party may file a motion to consolidate addressed to the judge's discretion.

The tenant urges the court to resolve the merits of its counterclaim. Although the parties contend that all relevant evidence was admitted at trial, the parties have failed adequately to brief the legal issues governing the tenant's counterclaim. We therefore are not in a position to decide the tenant's counterclaim, and offer no opinion on its merits.[6]

III. *Conclusion.*

For the abovementioned reasons we conclude that the Superior Court judge did not err in dismissing the tenant's

---

served with a notice to quit and the landlord started a summary process action to regain possession.

[6]The tenant filed a separate complaint in the Superior Court in July, 2000, alleging the same claims as the counterclaim in the present action. However, that case was dismissed pursuant to Mass. R. Civ. P. 12 (b) (9), 365 Mass. 754 (1974), because a prior case (the case now before us) was still pending. The tenant has appealed from the dismissal to the Appeals Court. Given the result we reach today, we would expect that the tenant will be allowed to proceed with the claim already commenced in the Superior Court. The purpose underlying rule 12 (b) (9), which is to guard against claim splitting, see *Yentile* v. *Howland*, 26 Mass. App. Ct. 214, 216 (1988), would not be served in these circumstances if both the tenant's counterclaim and its separate civil action were dismissed without reaching their substantive merits.

counterclaim, because such a claim may not be brought in a commercial summary process action.

*Judgment affirmed.*