PATRICIA WOJCIK *vs.* LYNN HOUSING AUTHORITY & another.[1]

No. 05-P-204.

Essex. December 7, 2005. - April 14, 2006.

Present: GREENBERG, DOERFER, & KATZMANN, JJ.

*Housing Authority. Administrative Law,* Hearing, Regulations. *Due Process of Law,* Hearing. *Civil Rights,* Attorney's fees.

In an action brought in Housing Court by a tenant against a public housing authority (authority), challenging the authority's termination of the tenant's federal rent subsidy assistance payments, the judge did not err in granting summary judgment in favor of the tenant, where the authority had no authority to make such a determination, which disregarded a decision to the contrary made by the authority's hearing officer that was in accordance with the law and supported by the evidence. [106-115]

A prevailing plaintiff was not entitled to an award of attorney's fees under 42 U.S.C. § 1988 for a claim arising out of a good faith controversy over the authority of a hearing officer of a public housing authority to make discretionary decisions regarding the termination of the plaintiff's federal rent subsidy assistance payments. [115-116]

CIVIL ACTION commenced in the Northeast Division of the Housing Court Department on August 21, 2003.

The case was heard by *David D. Kerman,* J., on motions for summary judgment, and a motion for attorney's fees was heard by him.

*Webb F. Primason* for the defendants.

*James Breslauer* for the plaintiff.

DOERFER, J. The plaintiff, Patricia Wojcik, receives "section 8"[2] benefits, which are administered by the Lynn Housing

---

[1]Charles Gaeta, executive director of the Lynn Housing Authority.

[2]The Housing Choice Voucher Program, commonly referred to as "section 8," was established by Congress pursuant to § 201(a) of the Housing and Community Development Act of 1974, amending § 8 of the United States Housing Act of 1937. See 42 U.S.C. § 1437f(o) (2003); 24 C.F.R. §§ 982.1 et seq. (2005). It allows low-income families seeking assistance to apply to a

Authority (LHA). In April, 2003, she had occasion to seek the assistance of the LHA over the telephone because of a controversy she was having with her landlord. During the course of this encounter she uttered a threat to the person to whom she was speaking. The LHA subsequently notified her that her benefits were terminated on account of this threatening conduct.

Under a procedure provided for by Federal regulations promulgated by the Department of Housing and Urban Development (HUD) relating to termination of benefits,[3] she had a hearing before a hearing officer designated by the LHA. The hearing officer heard evidence that included an account of mitigating circumstances relating to the emotional stress the plaintiff was experiencing and the remorse and quick apologies made by the plaintiff for her admittedly inappropriate behavior. The hearing officer determined that her eligibility for rental subsidy assistance should continue upon certain conditions, relating to her future behavior and counseling.

The LHA decided to disregard the decision of the hearing officer. It claims, in essence, that it and it alone had the authority to decide whether to exercise discretion to take mitigating factors into consideration when confronted with possible terminations of this type and that it was entitled to disregard the decision of the hearing officer.

---

local public housing authority, in this case the Lynn Housing Authority. See 24 C.F.R. § 982.1. If approved, the local housing authority will issue a section 8 voucher to the family. See 24 C.F.R. § 982.302. With this voucher, the family may then locate a suitable apartment in the private market and enter into a lease that is in accordance with the applicable housing authority guidelines. *Ibid.* Once the housing authority has approved the lease, the family may then pay thirty percent of its adjusted monthly income to the owner of the unit in satisfaction of its rent obligation. 42 U.S.C. § 1437f(o)(2)(A). Under its own agreement with the owner, the housing authority then pays the owner the difference between what the tenant has paid and the monthly rent charged. 42 U.S.C. § 1437f(c)(3).

The section 8 housing voucher program is the most significant form of Federal housing assistance. Center on Budget and Policy Priorities, Introduction to the Housing Voucher Program (May 15, 2003). www.centeronbudget.org/5-15-03hous.htm (last visited on March 21, 2006). In 2003, there were about 2.1 million housing vouchers and only twenty-five percent of eligible households received assistance; many communities experience long waiting lists and have even stopped issuing new vouchers. *Ibid.*

[3]Sections 982.551 et seq. of Title 24 of the Code of Federal Regulations.

The plaintiff filed a complaint in the Northeast Division of the Housing Court Department challenging the legality of the decision of the LHA to disregard the decision of the hearing officer and to terminate her section 8 benefits. Summary judgment was entered for the plaintiff and her motion for attorney's fees was allowed. The LHA and its executive director appeal from these rulings.[4] The resolution of this dispute requires us to interpret the particular Federal regulations that govern the termination of section 8 benefits by a public housing agency (PHA). Our analysis leads us to conclude that the LHA did not have the authority, on these facts, to disregard the decision of the hearing officer.

1. *The record before the hearing officer.*[5] The hearing officer heard from the plaintiff directly and by way of representations made by her counsel. The LHA appeared by way of a staff person, Barbara Morrison.

Morrison testified that the plaintiff, on April 8, 2003, during a telephone conversation, "threatened to shoot . . . Susan Alfonsi, a case worker for the housing authority." In particular, it was alleged that the plaintiff said she had a gun and was going to "shoot Ms. Alfonsi's head off."

For her part, the plaintiff did not deny she made the threat. Her attorney pointed out that the plaintiff immediately tried to apologize in another telephone call and did in fact do so in a

---

[4]The record on appeal consists of the written finding of the hearing officer, the verified complaint, some affidavits supplied by the LHA, and the written decisions of the Housing Court judge. The parties do not raise any issue as to the propriety of reviewing the action of the LHA in this case by a complaint seeking equitable relief. In particular no claim is made, with regard to the Federal benefits and regulations involved, that this matter should have been reviewed under the State Administrative Procedure Act, G. L. c. 30A. Contrast *Madera* v. *Secretary of the Executive Office of Communities & Dev.*, 418 Mass. 452 (1994). Judicial review of the termination or deprivation of Federal housing benefits has long been framed as a claim for deprivation of a vested property interest without due process of law. See, e.g., *Ferguson* v. *Metropolitan Dev. & Hous. Agency*, 485 F. Supp. 517, 521-524 (M.D. Tenn. 1980). See also *Vandermark* v. *Housing Authy. of York*, 663 F.2d 436, 442 (3d Cir. 1981), citing *Board of Regents* v. *Roth*, 408 U.S. 564 (1972); *Edgecomb* v. *Housing Authy. of Vernon*, 824 F. Supp. 312, 314-315 (D. Conn. 1993).

[5]No issues are raised about the informality of the method by which facts were presented to the hearing officer. He was not required to follow strict rules of evidence, 24 C.F.R. § 982.555(e)(5), and no claim is made that unreliable hearsay was employed.

letter to the LHA. The notice of termination of her section 8 benefits was thereafter issued, stating that the reason for termination was that she had "engaged in or threatened abusive or violent behavior toward PHA personnel." The LHA did not seek to learn of or to consider any mitigating circumstances. It took a different view of the substance of a follow-up call by the plaintiff and a subsequent letter of apology.

The hearing officer also considered representations that the plaintiff had been upset with her landlord over lease and rent issues and had been the victim of a violent domestic assault shortly before the incident. Her counsel further represented that her doctor had misprescribed medication, "which contributed to the incident." Both the plaintiff and her counsel said that she had genuine remorse for the incident. Her counsel "also pointed out that, in addition to [the plaintiff's] problems, her children had disabilities."

The plaintiff's counsel requested reasonable accommodation based on her and her children's disabilities, including her status as a victim of domestic violence and her mental condition. When asked at the hearing whether the matter could be adjusted, Morrison consulted with David Moore, the person who had issued the termination notice. Moore was not inclined to change the position of the LHA.

The hearing officer concluded in findings that the LHA had discretion to take into account all relevant circumstances. He noted that although the plaintiff did not deny making an inappropriate and threatening statement, she had apologized. He noted that she undertook not to engage in such activity in the future and was aware of the consequences if she did so.

He then decided that she should remain eligible for rent subsidy assistance upon the condition that she refrain from threatening or abusive behavior toward any housing authority member and that she continue to consult with appropriate agencies and medical and other service providers as required.

2. *Discussion.* We turn first to 24 C.F.R. § 982.555, the material parts of which are set forth in the margin,[6] for the source of

---

[6]Section 982.555 states in material part:

the authority of the PHA to disregard a decision of a hearing

> "(a) When hearing is required. (1) a PHA must give a participant fam-
> ily an opportunity for an informal hearing to consider whether the fol-
> lowing PHA decisions relating to the individual circumstances of a
> participant family are in accordance with the law, HUD regulations and
> PHA policies:
>
> "  . . .
>
> "(v) A determination to terminate assistance for a participant family
> because of the family's action or failure to act (see § 982.552).
>
> "  . . .
>
> "(2) In the cases described in paragraphs (a)(1)(iv), (v) and (vi) of
> this section, the PHA must give the opportunity for an informal hearing
> before the PHA terminates housing assistance payments for the family
> under an outstanding [housing assistance payments] contract.
>
> "  . . .
>
> "(c) Notice to family.
>
> "  . . .
>
> "(2) In the cases described in paragraphs (a)(1)(iv), (v) and (vi) of
> this section, the PHA must give the family prompt written notice that
> the family may request a hearing.
>
> "  . . .
>
> "(e) Hearing procedures —
>
> "  . . .
>
> "(4) Hearing officer: Appointment and authority. (i) The hearing
> may be conducted by any person or persons designated by the PHA,
> other than a person who made or approved the decision under review or
> a subordinate of this person.
>
> "  . . .
>
> "(6) Issuance of decision. The person who conducts the hearing
> must issue a written decision, stating briefly the reasons for the decision.
> Factual determinations relating to the individual circumstances of the
> family shall be based on a preponderance of the evidence presented at
> the hearing. A copy of the hearing decision shall be furnished promptly
> to the family.
>
> "(f) Effect of decision. The PHA is not bound by a hearing decision:
>
> "(1) Concerning a matter for which the PHA is not required to
> provide an opportunity for an informal hearing under this section, or

officer. We note that a PHA cannot disregard such a decision except on grounds set forth in § 982.555(f), which states:

"(f) Effect of decision. The PHA is not bound by a hearing decision:

" . . .

"(2) Contrary to HUD regulations or requirements, or otherwise contrary to federal, State, or local law."[7]

Thus, the issue is whether the hearing officer's decision was

that otherwise exceeds the authority of the person conducting the hearing under the PHA hearing procedures.

"(2) Contrary to HUD regulations or requirements, or otherwise contrary to federal, State, or local law.

"(3) If the PHA determines that it is not bound by a hearing decision, the PHA must promptly notify the family of the determination, and of the reasons for the determination."

[7]The only relevant part of § 982.555(f) is subsection (2). This is a case in which the PHA was required to provide for an informal hearing because the benefits were terminated based on "the family's action or failure to act." 24 C.F.R. § 982.555(a)(1)(v). Thus, this was not a hearing, in the terms of 24 C.F.R. § 982.555(f)(1), "[c]oncerning a matter for which the PHA is not required to provide an opportunity for an informal hearing under this section . . . ." Nor can it be claimed on this record that, under 24 C.F.R. § 982.555(f)(1), the decision of the hearing officer was not authorized under the "PHA hearing procedures." The PHA hearing procedures referred to are those required to be established in a written administrative plan adopted by the PHA. See 24 C.F.R. § 982.54(d)(13).

Section 982.54 states in material part:

"Administrative plan. (a) The PHA must adopt a written administrative plan that establishes local policies for administration of the program in accordance with HUD requirements. The administrative plan and any revisions of the plan must be formally adopted by the PHA Board of Commissioners or other authorized PHA officials. The administrative plan states PHA policy on matters for which the PHA has discretion to establish local policies.

"(b) The administrative plan must be in accordance with HUD regulations and requirements.

" . . .

"(d) The PHA administrative plan must cover PHA policies on these subjects:

" . . .

"[c]ontrary to HUD regulations or requirements" or "contrary to federal, State, or local law."[8]

The claim of the LHA on appeal is that the hearing officer's decision was contrary to 24 C.F.R. § 982.555(a)(1), which limits the hearing officer's review to whether the PHA decision was "in accordance with the law, HUD regulations and PHA policies." The LHA claims that the hearing officer was not authorized by law or the HUD regulations to make a discretionary decision declining to terminate benefits.[9] To address this argument we must analyze the relevant regulations.

a. *Regulations bearing on the informal hearing.* We note first that where the PHA terminates benefits based on threats by a family member, it must provide to the family an opportunity for an informal hearing. 24 C.F.R. §§ 982.555(a)(1)(v), 982.552(c)(1)(ix). We further note that a hearing may be offered but is not required where the PHA takes certain types of adverse action relating to benefits. 24 C.F.R. § 982.555(b). These include such things as a determination not to approve an extension of a voucher term, or a decision that a unit is not in compliance with housing quality standards (unless the claim is that the lack of compliance was caused by the family as described in § 982.551[c]).

We note from this dichotomy that a mandatory informal hearing procedure is more than a mere courtesy but is founded on due process principles. Only in those cases where the family is to be deprived of an entitlement does due process become important. See *Goldberg* v. *Kelly,* 397 U.S. 254 (1970). The

---

"(13) Informal hearing procedures for participants."

The LHA's administrative plan is not part of the record, and the LHA has made no claim on appeal based on its local hearing procedures.

[8]We query whether there is any significance to the distinction between the phrases "contrary to federal, State, or local law" in § 982.555(f)(2), and "in accordance with the law" in § 982.555(a)(1). See note 6, *supra.* We consider them to be equally broad for sake of argument.

[9]A slightly different argument is that if the hearing officer may make a discretionary decision it can be disregarded if the PHA does not agree with it. But to reconcile that argument with the terms of § 982.555(f)(2), such a decision by the hearing officer would have to be "[c]ontrary to HUD regulations or requirements" or "contrary to federal, State, or local law," not merely one with which the PHA disagreed. To avoid circularity the LHA's argument must be construed to mean that the hearing officer does not have authority to make any discretionary decision.

Federal courts have applied the *Goldberg* case to eviction or actions leading to eviction of tenants of federally subsidized housing programs. See *Ferguson* v. *Metropolitan Dev. & Hous. Agency*, 485 F. Supp. 517, 521-524 (M.D. Tenn. 1980) (applying the constitutional rubric of *Goldberg* to the deprivation of section 8 benefits by a PHA). See also *Caramico* v. *Secretary of the Dept. of Hous. & Urban Dev.*, 509 F.2d 694, 700-701 (2d Cir. 1974). The LHA does not dispute that due process principles shape the analysis of the legal issues in this case.

The regulations provide for the elements of due process. The family is entitled to "prompt written notice" that they may have a hearing, and the notice "must . . . [c]ontain a brief statement of the reasons for the decision." 24 C.F.R. § 982.555(c)(2). The family is entitled to be represented, see 24 C.F.R. § 982.555(e)(3), and to present evidence and question witnesses. 24 C.F.R. § 982.555(e)(5).

It is important to note that the hearing is to be conducted by an impartial hearing officer, although that person is designated by the PHA so long as he or she is neither the one whose decision is being challenged nor subordinate to that person. 24 C.F.R. § 982.555(e)(4). There is even a provision for document discovery by both the family and the PHA. 24 C.F.R. § 982.555(e)(2).

As pertinent here, the purpose of the hearing is to have "an informal hearing on the [PHA's] decision" to terminate benefits for a family that does "not agree with the [PHA's] decision." 24 C.F.R. § 982.555(c)(2)(ii). At the conclusion of the hearing the hearing officer is to issue his own decision pursuant to 24 C.F.R. § 982.555(e)(6), which provides:

> "Issuance of decision. The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing. A copy of the hearing decision shall be furnished promptly to the family."

Significantly, this regulation speaks of a hearing officer making both "[f]actual determinations" and a "decision." In particular, it refers to factual determinations relating to "individual

circumstances." However, the regulation clearly contemplates that the hearing officer is entitled to engage in more than mere fact finding.

b. *Basis for termination.* The subject matter to be considered by the hearing officer is the initial decision of the PHA to terminate benefits. An initial inquiry would naturally be whether there were facts of a type that would justify termination under the regulations. Thus, one function of the informal procedure is to give the family an opportunity to contest the factual predicate for termination by presenting evidence and argument before a hearing officer. In this case, the factual predicate for termination is whether the family has "engaged in or threatened abusive or violent behavior toward PHA personnel." 24 C.F.R. § 982.552(c)(1)(ix). It was virtually conceded at the hearing that the plaintiff's conduct satisfied that predicate.

c. *Discretion to mitigate and not terminate benefits.* Section 982.552(c)(2) of Title 24 of the Code of Federal Regulations provides in material part:

> "Consideration of circumstances. In determining whether to deny or terminate assistance because of action or failure to act by members of the family:
>
> "(i) The PHA may consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of . . . termination of assistance on other family members who were not involved in the action or failure.
>
> "(ii) The PHA may impose, as a condition of continued assistance for other family members, a requirement that other family members who participated in or were culpable for the action or failure will not reside in the unit. The PHA may permit the other members of a participant family to continue receiving assistance.
>
> " . . .
>
> "(iv) If the family includes a person with disabilities, the

PHA decision concerning such action is subject to consideration of reasonable accommodation in accordance with part 8 of this title."

The regulations make it clear that a decision whether to terminate benefits because of action or inaction of a family member must involve a process in which the affected family at least has an opportunity to present evidence and arguments about circumstances that might move the decision maker to impose a penalty less severe than termination. Thus the hearing officer must hear evidence and find facts relating to "all relevant circumstances." Although several types of circumstances are listed, the list is not exclusive where the phrase used is "all relevant circumstances such as . . . ." The decision maker need not hear any evidence or arguments that he rules are not "relevant."

The right of the family to present such facts and arguments does not mean that the decision maker will be persuaded to mitigate the penalty. But it is clearly stated that a decision not to terminate may be based on a variety of relevant circumstances that are all balanced together.[10] Though cabined by rules of relevance and subject to broad review for abuse of discretion, the process of weighing the evidence relating to circumstances is the essence of a discretionary decision. See *Iamele* v. *Asselin,* 444 Mass. 734, 740 n.4 (2005), quoting from *Lonergan-Gillen* v. *Gillen,* 57 Mass. App. Ct. 746, 748-749 (2003) ("proper exercise of judicial discretion involves making a circumstantially fair and reasonable choice within a range of permitted options").

Here, when the LHA made its initial decision to terminate, it is clear that no such evidence or consideration was given to circumstances that might have moved the LHA to impose a sanction less severe than termination of benefits. In this posture of the case it is the informal hearing process in which such is-

[10]The converse situation was presented in *Carter* v. *Lynn Hous. Authy., post* 117 (2006), where the circumstances neither moved nor were required to move the decision maker to mitigate the sanction. That case does not imply that a family can be precluded from presenting such evidence and arguments or that the decision maker can rule that he has no discretion to take such circumstances into account. See *Lonergan-Gillen* v. *Gillen,* 57 Mass. App. Ct. 746, 748-749 (2003). See also *Commonwealth* v. *Fredette,* 56 Mass. App. Ct. 253, 259 n.10 (2002) ("[f]ailure to exercise discretion is itself an abuse of discretion").

sues were first able to be explored by the taking of evidence and the consideration of arguments.

The LHA argues in effect that, in spite of the obvious purpose of the hearing to address the issue of mitigation, the hearing officer is precluded from making any decision on mitigation. This view undermines the due process purpose served by the informal hearing procedure. It would be an empty gesture to provide a family the opportunity to present evidence and arguments on the only viable issue in the case yet preclude the hearing officer from making any decision on that issue.

There is no due process provided by the subsequent consideration by the PHA whether to disregard the hearing officer decision. The family has no right or even opportunity under the regulations to present its facts and arguments afresh at the PHA level, once the hearing officer has rendered a decision. For due process to mean anything here the hearing officer must be able to make a decision on the discretionary issue, based upon the evidence and arguments presented to him.

The LHA took the position in this case that one reason it was disregarding the hearing officer decision was that it disagreed with the conclusion of the hearing officer that the plaintiff had apologized and had remorse. It characterized the plaintiff's apologies as insincere and not a basis upon which to change its decision to terminate her benefits. The hearing officer came to a different factual conclusion, crediting the sincerity of the plaintiff's recognition of her wrongdoing, and expressing confidence that with proper assistance she could avoid repeating her threatening behavior. This is precisely the due process function that an impartial hearing officer can serve: to interpose objectivity and impartiality in reviewing the understandable but possibly overly harsh decision of a PHA, especially where factual and circumstantial issues are disputed and laden with emotion.

d. *Hearing officer decision.* The hearing officer is expected under the regulations to render a "decision" that deals with "individual circumstances" and not simply to make a report of facts. Thus, 24 C.F.R. § 982.555(e)(6) provides:

"The person who conducts the hearing must issue a writ-

ten decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing."

The phrase "reasons for the decision" suggests the exercise of judgment as well as fact finding. The hearing officer is to consider individual and mitigating circumstances as well as bare facts relating to the event. This compels him to exercise judgment, which involves the element of discretion in the context of the case at bar.

e. *Subsequent action by the PHA.* The regulations confine the PHA's review, as mentioned above, to whether the decision of the hearing officer was "[c]ontrary to HUD regulations or requirements, or otherwise contrary to federal, State, or local law." 24 C.F.R. § 982.555(f)(2). This does not create a right in the PHA to conduct a de novo review of the hearing officer's decision. In its argument on appeal the LHA attempts to stay within these boundaries by characterizing the exercise of discretion by the hearing officer as an error of law. This analysis leads to a dead end under the regulations. On this view, no one would have the authority to exercise discretion: neither the hearing officer, as argued by the LHA, nor the PHA, since the regulations do not give the PHA discretionary authority to reject the decision of the hearing officer.

The only sensible interpretation of this regulatory framework is to recognize that the concept of an "error of law" in the context of a review by the PHA of a hearing officer decision must mean the traditional function performed by the review of a trial-type hearing and decision: Were the findings of fact supported by the evidence? Was proper procedure followed? Were proper legal principles applied? And, did the decision maker abuse his discretion where issues of judgment and discretion were before him?

f. *Conclusion regarding the interpretation of the HUD regulations.* The several related HUD regulations considered as a whole lead us to conclude that a hearing officer does have the authority to exercise discretion and to decline to terminate benefits so long as that decision is based on the facts found by

the hearing officer and is not an abuse of discretion. To the extent that a hearing officer's decision is in violation of HUD regulations or otherwise is in violation of State, Federal, or local law, it, of course, may be disregarded. But it is not a violation of HUD regulations for the hearing officer to make a discretionary decision, and a hearing officer decision cannot be disregarded based on the mere fact that it is discretionary.

g. *Application to this case.* Here the facts found by the hearing officer were supported by the evidence. The facts found were of a type that justified the exercise of discretion to withhold the sanction of termination. Although the event was serious, it was reasonably viewed by the hearing officer as an isolated event, immediately regretted and explicable by attending circumstances. The hearing officer did not abuse his discretion and thus made no error of law. Nor was his decision in violation of HUD regulations.[11]

3. *Attorney's fees.* This was a good faith controversy over the authority of a hearing officer to make discretionary decisions. At issue was the proper interpretation of a set of housing regulations. Furthermore, the only way for the LHA to obtain judicial review of its position regarding the proper interpretation of those regulations was to disregard the decision of the hearing officer, thereby forcing the plaintiff to challenge the LHA decision in court. The fact that resolution of the issues required the court to apply principles of constitutional law did not promote this claim into one for which attorney's fees are available under 42 U.S.C. § 1988.

Under 42 U.S.C. § 1988, attorney's fees are available when a plaintiff prevails on a claim under 42 U.S.C. § 1983, which creates a Federal statutory tort cause of action for deprivation of rights secured by the United States Constitution or Federal law. See *Johnson* v. *Commissioner of Pub. Welfare*, 419 Mass. 185, 186 (1994). The constitutional right claimed here is the right to

---

[11]The hearing officer mentioned the evidence relating to the disabilities of the plaintiff and her children. While he concluded that it was unnecessary for him to decide upon issues of reasonable accommodation, he noted his view that "it appears . . . this option would apply to this case" pursuant to 24 C.F.R. § 982.552(c)(2)(iv). We conclude that the evidence was sufficient to justify his discretionary decision and that such discretion was properly exercised even without specific reliance on the facts relating to disabilities.

due process before a section 8 benefit is terminated. The LHA followed the regulations and provided due process to the plaintiff, which enabled her to challenge the LHA's decision to terminate her benefits. Furthermore, the regulations gave the LHA the right to disregard any action of the hearing officer that was in violation of law or applicable regulations. The regulations contemplate the LHA making a judgment as to the legality of the hearing officer's decision. In doing so in good faith, the LHA does not act at its peril and put the plaintiff's due process rights in jeopardy. The LHA's erroneous interpretation of those regulations was committed within the confines of the due process scheme established by the regulations. The fact that the LHA violated (as we now have determined) the regulations by exceeding its authority does not mean that it deprived the plaintiff of the due process rights secured by those regulations. See *Blessing* v. *Freestone*, 520 U.S. 329, 340 (1997). See also *Bishop* v. *Wood*, 426 U.S. 341, 350 (1976) (the due process clause of the Fourteenth Amendment to the United States Constitution "is not a guarantee against incorrect or ill-advised . . . decisions").

4. *Conclusion.* The judgment is reversed insofar as it awarded the plaintiff attorney's fees. In all other respects, the judgment is affirmed.

*So ordered.*