Brant, J.
This is an appeal by defendant Tony Eskanian (“Eskanian”) of a pretrial order striking various affirmative defenses he had filed in this commercial eviction action involving the operation of a gas station. After the defenses were struck, a second trial court judge granted summary judgment to plaintiff Petro Group, Inc. (“Petro”), at the urging of counsel for both parties, for possession of the commercial properly and for damages in the amount of $32,000.00. Eskanian did not appeal that ruling.[1]
Eskanian concedes in his brief that of the ten affirmative defenses struck by the *96 trial court, three were rendered moot by the dismissal of the counterclaims. The remaining seven defenses are redundant and raise only the following distinct substantive issues: (1) whether Petro lacked standing to bring this summary process action; (2) whether the action should have been brought against King Petroleum, Inc. (“King Petroleum”) instead of Eskanian, who was allegedly only an employee of King Petroleum; and (3) whether Eskanian ever received a notice to quit.
Petro’s motion to strike Eskanian’s affirmative defenses was based on several supporting affidavits as well as Eskanian’s answer and his responses to requests for admissions. Those materials establish the following facts, which were unrebutted by any contrary affidavits or submissions.
The commercial premises in question, a gas station located at 603 Main Street, Wilmington, are owned by Dominic F. Saraceno and Dominic F. Saraceno, Jr. as Trustees of the Saraceno Family Trust (“Saraceno Trust”). On June 22, 2000, the Saraceno Trust leased the premises to Raymond Cozzi (“Cozzi”) and Walid Eldayha (“Eldayha”) for a ten-year term ending on June 21,2010.
On October 1,2000, Cozzi and Eldayha executed an agreement with George Z. Griege (“Griege”)[2] to permit either Griege, or an entity he might establish within ninety days, to operate the gas station. Three days later, Griege created a corporation named Route 38 Gas and Service, Inc. (“Route 38 Gas”) to be the operating entity. The 2000 operating agreement between Griege and Cozzi and Eldayha stated that it would expire on June 21,2005 unless it was extended or there was an early termination. An extension of the operating agreement’s term required notice of an extension by April 21,2005.
On January 16, 2002, Cozzi and Eldayha assigned their interest in the lease with the Saraceno Trust to Petro, which has acted as the landlord since that date.
In June, 2004, Griege sold his interest in Route 38 Gas and all equipment held by that corporation to Miguel Pineda (“Pineda”). Pineda operated the gas station until January 10,2007. During that three and one-half year period, Pineda’s rent payments to Petro were continually late. By 2006, Pineda’s rent arrearage had reached $139,000.00. On August 1,2006, Pineda signed an agreement granting Petro a security interest in all of his equipment at the gas station. He also made small payments to reduce the rent arrearage.
On January 7, 2007, Route 38 Gas entered into a commercial sublease with King Petroleum, ostensibly permitting King Petroleum to operate the gas station. But the Griege/Route 38 Gas agreement with Cozzi and Eldayha (assignors of Petro) to operate the gas station was never extended by any party, and had expired by its own terms on June 21,2005.
In late 2006, shortly before King Petroleum’s sublease was signed, Petro entered into negotiations with Eskanian for his purchase of Petro’s interest in the lease for 603 Main Street, Wilmington. Although various documents were drafted and discussed, the parties never reached a final agreement. Eskanian never made reference to King Petroleum in any conversation or communication with Petro.
During the unsuccessful negotiations, Eskanian obtained Petro’s permission to enter the premises for the restricted purpose of determining the condition of the gas station and the need for future repairs or improvements. Soon thereafter, Petro learned that Eskanian was actually operating the gas station even though he had not *97 been authorized to do so by Petro or the Saraceno Trust.
Petro commenced this eviction action against Eskanian in February, 2007. As noted, summary judgment was entered in favor of Petro for both possession and damages, and Eskanian filed this appeal of the first motion judge’s order striking his affirmative defenses.
Petro’s motion to strike the affirmative defenses was filed pursuant to Mass. R. Civ. P, Rule 12(f), which permits a court to strike “any insufficient defense” as well as “any redundant, immaterial, impertinent, or scandalous matter.” Motions to strike defenses are rarely granted. 5C C.A. Wright & A.R. Miller, Federal Practice and Procedure §1380, at 394 (2004). See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th Cir. 1982).
To prevail on its motion to strike, Petro was required to establish that Eskanian could not prove the legal matters asserted in his affirmative defenses, an argument traditionally associated with summary judgment. See generally Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711-712 (1991). The dispositive issue on a motion to strike is whether the proposed affirmative defenses would fail as a matter of law. See Quinn Bros. of Essex, Inc. v. R.L. Jeannotte, Inc., 2007 Mass. App. Div. 198, 199. For the affirmative defenses in this case to survive Petro’s motion, “[tjhere must be some indication that [Eskanian] can produce the requisite quantum of evidence to enable him to reach the jury with his claim.” Dexter’s Hearthside Restaurant, Inc. v. Whitehall Co., 24 Mass. App. Ct. 217, 223 (1987). Thus, Petro’s motion to strike depended upon its demonstration “that the allegations being challenged [were] so unrelated to [Petro’s] claims as to be unworthy of any consideration as a defense and that their presence in the pleadings throughout the proceeding [would] be prejudicial to [Petro].” Wright & Miller, supra §1380, at 397. See Federal Deposit Ins. Corp. v. Niblo, 821 F. Supp. 441, 449 (N.D. Tex. 1993). The existence of genuine questions of law or fact regarding a particular defense would require a denial of the motion. Federal Deposit Ins. Corp., supra.
There was no error in the allowance of Petro’s motion to strike those affirmative defenses alleging that Petro was not the proper plaintiff. The uncontested material facts establish that Petro acquired the status of landlord through the assignment of the lease to it by Cozzi and Eldayha. Thus, Petro had the requisite authority to bring this summary process action.
With respect to the assertion that Eskanian was not the proper defendant in this eviction action, the established facts are only slightly more equivocal. It is undisputed that the 2000 operating agreement was not extended before the expiration of its initial term in 2005 and, thus, that Route 38 Gas continued to operate the gas station after the expiration date as a tenant at will. While Petro was dissatisfied with Pineda’s growing rent arrearage, it never sought to evict him. But Pineda had no authority to enter into a commercial sublease with King Petroleum on January 10,2007 without even giving notice to Petro, much less obtaining its assent.
When Petro learned that Eskanian had exceeded the limited permission given to him to examine the premises and was apparently operating the gas station, it had the authority to order Eskanian to leave by the notice it sent to him on February 9,2007. Petro, knowing nothing about King Petroleum, Inc., reasonably assumed that Eskanian was attempting to act as the tenant. It might be argued that if King Petroleum was actually operating the gas station as some form of tenant of the commercial premises, and King Petroleum was a legal entity separate from Eskanian, *98 then this eviction action was brought against the wrong party. At first glance, this appears to be a fact in dispute that Eskanian can litigate.
However, Eskanian agreed to the entry of summary judgment against him and in favor of Petro for both damages and possession of the premises. In so doing, Eskanian effectively stipulated that there were no material facts in dispute in this case, including the facts that he had no legal interest in the property and no right even to enter onto the premises beyond the limited permission Petro had granted him to inspect it for possible purchase. Therefore, Eskanian cannot seek on this appeal to revive the question of whether any tenancy with him (or with King Petroleum) existed. Further, he cannot claim a right to a notice to quit when Petro alleged, and Eskanian agreed, that Petro never leased, or agreed to lease, the property to him.
The allowance of Petro’s motion to strike Eskanian’s affirmative defenses is affirmed. Appeal dismissed.
So ordered.

 Various counterclaims filed by Eskanian in this matter were also dismissed. Acknowledging that counterclaims may be brought only in residential summary process actions, Fafard v. Lincoln Pharmacy of Milford, Inc., 439 Mass. 512, 515 (2003), Eskanian does not challenge the dismissal of his counterclaims. It should be noted that although Eskanian characterized the pleadings in question as counterclaims, the purported plaintiff-in-counterclaim was not Eskanian, but King Petroleum, Inc., a corporation that Eskanian claims is his employer. The sole officer and director of King Petroleum, Inc. is named Jacqueline Eskanian.

 The name is spelled both as “Griege” and “Greige” in different pleadings in this case.