## LORING TOWERS ASSOCIATES[1] *vs.* MELVIN FURTICK; BOSTON HOUSING AUTHORITY, third-party defendant.

No. 13-P-799.

Essex. December 3, 2013. - March 27, 2014.

Present: GRAINGER, BROWN, & CARHART, JJ.

*Summary Process. Practice, Civil,* Summary process, Complaint, Parties. *Boston Housing Authority. Due Process of Law,* Housing.

In the circumstances of a summary process action involving a tenant in subsidized housing whose section 8 benefits had been terminated by the Boston Housing Authority (authority), the Housing Court judge did not err in allowing the tenant's motion to file a third-party complaint against the authority, where, given that the landlord sought rent arrearage from the tenant, the authority was potentially liable for contribution and was thus a proper candidate for impleader; and where a section 8 participant's right to bring such a third-party complaint was authorized by Mass.R.Civ.P. 14(a) and was not inconsistent with the Uniform Summary Process rules, applicable statutory law, or the jurisdiction of the Housing Court [145-146]; further, the judge did not err in denying the authority's motion to dismiss based on the asserted untimeliness of the defendant's third-party claim [145-147].

A Housing Court judge did not err in restoring, retroactively to the date of termination, the housing benefits of a physically disabled and mentally ill senior citizen, where the administrative decision rested upon a flawed process conducted by the issuing housing authority. [147-149]

SUMMARY PROCESS. Complaint filed in the Salem Division of the District Court Department on April 23, 2012.

Following transfer to the Northeast Division of the Housing Court Department, a motion to dismiss a third-party complaint was heard by *David D. Kerman*, J.

*Michael J. Louis & Angela Marcolina* for Boston Housing Authority.

---

[1]By its agent NHPMN Management, LLC. Loring Towers Associates, the landlord in the underlying summary process case, did not participate in this appeal by the Boston Housing Authority.

*Laura Gallant* (*James Breslauer* with her) for Melvin Furtick.

BROWN, J. Melvin Furtick, a physically disabled and mentally ill senior citizen, has been a participant in the Federal Housing Choice Voucher Program, better known as "section 8," for over thirty years.[2] The Boston Housing Authority (BHA) terminated Furtick's housing assistance benefits, a protected property interest, in violation of his due process rights. Such a result cannot be countenanced by any court of law. Accordingly, we affirm the judgment of the Housing Court in this summary process litigation restoring Furtick's housing benefits retroactively to the date of the unlawful termination.

*Facts.* Except where noted, the following facts are undisputed. On January 17, 2012, the leased housing division of the BHA sent a letter addressed to Furtick at his subsidized apartment in Salem, notifying him of the proposed termination of his housing assistance benefits based upon his failure to attend two section 8 voucher recertification meetings scheduled for November 28, 2011, and December 22, 2011. See § 13.6.2 of the BHA Administrative Plan for Section 8 Programs (revised December 6, 2011) (BHA administrative plan). The BHA letter informed Furtick that he had the right to an informal hearing regarding the proposed termination before the BHA's department of grievances and appeals as long as he requested a hearing within twenty days. See *id.* at § 13.6.3. When Furtick failed to respond within the twenty-day appeal period, the BHA, by letter dated February 7, 2012, and mailed to his apartment, terminated Furtick's subsidy effective March 31, 2012. As Furtick was in jail during that time, he had no actual knowledge of any of this.[3] Upon his release, Furtick returned to his apartment and

---

[2]For a description of the section 8 voucher program, and an overview of its operation, see *Wojcik* v. *Lynn Hous. Authy.*, 66 Mass. App. Ct. 103, 103 n.2 (2006). The Boston Housing Authority (BHA) is a public housing authority that administers the program on behalf of the United States Department of Housing and Urban Development (HUD). The BHA was required to adopt a written plan establishing local policies for the administration of the program that was consistent with the regulations and requirements of HUD. See *id.* at 108 n.7; 24 C.F.R. § 982.54(a), (b) (2012). As applicable in this case, that written plan is the BHA Administrative Plan for Section 8 programs (revised December 6, 2011).

[3]Having pleaded guilty in early November, 2011, to charges of threatening

discovered that not only had the landlord changed the lock, but the BHA had terminated his benefits.[4]

On April 10, 2012, he personally traveled to the BHA's department of grievances and appeals and attempted to appeal the termination decision, explaining the reasons for his nonattendance at the recertification meetings as well as for his failure to request a timely hearing. The BHA representative informed him that a decision whether to grant a late hearing would be issued within ninety days, a fact reflected on the receipt provided to Furtick. Furtick indicated that he was temporarily living at the Lynn Emergency Shelter and asked that the BHA notice of the decision be sent there. After gaining access to his apartment again within a few days, he called the BHA, updating his address. At that time, the BHA did not inform him that on the very day of his visit, the BHA had mailed out notice of an adverse decision to him at the Lynn Emergency Shelter.[5]

Meanwhile, also in April of 2012, Furtick's landlord, prompted by the cessation of the BHA's payment of its share

___

his former wife, Furtick was incarcerated during that time at the Essex County house of correction. Although Furtick notified his landlord of his whereabouts, he did not tell the BHA about his incarceration. Mail addressed to him at his apartment was not forwarded to him at the house of correction. Furtick was released on March 30, 2012.

[4]The actions of the landlord on or about March 30, 2012, are in dispute. In his affidavit, Furtick averred that his landlord would not let him into his apartment until he paid his rent arrearage. In her affidavit, the property manager claimed that while she did in fact change the lock, she did so in order to protect Furtick's possessions from his former wife, an unauthorized tenant living in the apartment; and that furthermore, Furtick did not request the new key until April 11, 2012. A lockout without judicial process would, of course, have been illegal. In any event, as a result of the distressing news, Furtick began suffering from hallucinations and hearing voices. He was hospitalized in a locked psychiatric unit at the Carney Hospital for one week. The hospital discharged him to the Lynn Emergency Shelter, a homeless shelter for single adults.

[5]The Lynn Emergency Shelter did not forward to Furtick the BHA's notice of its decision sent by regular mail, and the notice sent by certified mail was returned to the BHA unclaimed. Furtick did not learn of the decision until a Neighborhood Legal Services staff member uncovered the letter in Furtick's BHA file in July, 2012. As late as August 1, 2012, the BHA caused Carol Segal, a housing advocate from Greater Lynn Senior Services assisting Furtick, to believe that the appeal process was still ongoing, permitting her to fax to the BHA letters from Furtick's doctors and therapists supporting his request for the reinstatement of his benefits.

of the rent, commenced a summary process action against him. Furtick defended in part by lodging a third-party complaint against the BHA, in which he sought reinstatement of his section 8 voucher. The BHA moved to dismiss on grounds that it could not properly be impleaded in the summary process case and that Furtick's complaint was time-barred. After two days of hearings, a judge of the Northeast Division of the Housing Court Department, acting on the undisputed facts, declined to allow the BHA's motion and instead ordered the reinstatement of Furtick's section 8 benefits retroactively to the date of their termination. Before us now is the BHA's appeal from the resulting judgment on the third-party complaint.

*Discussion. Third-party claim.* There was no error in the allowance of Furtick's motion to file a third-party complaint against the BHA. Rule 14(a) of the Massachusetts Rules of Civil Procedure, as amended, 385 Mass. 1216 (1982), permits a defendant to bring in a third party "who is or may be liable to him for all or part of the plaintiff's claim against him." In the underlying summary process action here, the landlord sought rent arrearage from Furtick. BHA was potentially liable for contribution, and thus a proper candidate for impleader. See *Gabbidon* v. *King*, 414 Mass. 685, 686-687 (1993).

Although the Uniform Summary Process (USP) Rules govern procedure in summary process cases, no USP rule specifically addresses third-party practice. In this situation, the Massachusetts Rules of Civil Procedure apply unless "inconsistent with [the USP] rules, with applicable statutory law or with the jurisdiction of the particular court [here, the Housing Court]." Rule 1 of the Uniform Summary Process Rules (1980). See *Deutsche Bank Natl. Trust Co.* v. *Gabriel*, 81 Mass. App. Ct. 564, 571 n.17 (2012). We find no such inconsistency here. Nothing in G. L. c. 239, the summary process statute, can be read to limit a section 8 participant's right to bring a third-party complaint against a public housing authority or plan administrator. Contrast *Fafard* v. *Lincoln Pharmacy of Milford, Inc.*, 439 Mass. 512, 515 (2003) (concluding that counterclaim could not be brought in commercial eviction cases where G. L. c. 239, § 8A, expressly limited that

right to actions "to recover possession of any premises rented or leased *for dwelling purposes*").[6]

The case of *Cummings Properties, LLC* v. *Cepoint Networks, LLC*, 78 Mass. App. Ct. 287 (2010), is inapposite. In *Cummings*, this court held that a private guarantor of a commercial lease, who lacked a possessory interest in the leasehold, was not a proper defendant in a summary process action. In reaching this holding, we construed the language of G. L. c. 239, §§ 1 and 2, to require a defendant to be in possession of the property. *Id.* at 288-289. A contrary holding would have been inconsistent with the plain language of the statute. *Id.* at 290. Here, in contrast, the statute is silent on third-party practice. There is no requirement under our jurisprudence that a third-party defendant be in possession of the property.

Express legislative intent, moreover, to permit third-party practice appears in G. L. c. 185C, § 19 (requiring clerks of the Housing Court to impose a fee of $120 for the filing of a third-party complaint or a motion to intervene as a plaintiff).[7] Compare *Bank of America, N.A.* v. *Rosa*, 466 Mass. 613, 625 n.11 (2013) (noting that a G. L. c. 93A, § 9, claim can be brought in the Housing Court, as provided in G. L. c. 185C, § 3, by way of a third-party action). Rule 14(a) applied here and authorized the filing of a third-party claim.[8]

The judge did not err by denying the BHA's motion to dismiss based on the asserted untimeliness of Furtick's third-party claim. The BHA was not entitled to pigeonhole Furtick's claim as one brought under the certiorari statute with its short limitations period of sixty days. See G. L. c. 249, § 4. As the Housing Court judge noted, the substance of Furtick's third-

---

[6]Nor is there a deficiency in Housing Court jurisdiction over the matter. See *Costa* v. *Fall River Hous. Authy.*, 71 Mass. App. Ct. 269, 274 & n.5 (2008), discussed *infra.*

[7]The Housing Court clerk's office waived the fee here based upon Furtick's indigency.

[8]To the extent that the BHA argues that a section 8 participant has no standing to enforce a public housing authority's housing assistance payments (HAP) contract with the landlord, suffice it to say that Furtick has never attempted to do so. No ruling was obtained on the BHA's claim that it had no obligation under the HAP contract to make rental payments while Furtick was not "residing" in the apartment. The issue was neither developed below nor properly preserved for review.

party complaint challenged the propriety of the procedure employed by the BHA in his case, the essence of a Federal civil rights claim.[9] See *Carter* v. *Lynn Hous. Authy.*, 450 Mass. 626, 633 (2008) ("'[J]udicial review of the decision to terminate [a housing benefit] 'has long been framed as a claim for deprivation of a vested property interest without due process of law' "), quoting from *Wojcik* v. *Lynn Hous. Authy.*, 66 Mass. App. Ct. 103, 105 n.4 (2006); *Costa* v. *Fall River Hous. Authy.*, 71 Mass. App. Ct. 269, 274 & n.5 (2008) (concluding that Housing Court properly exercised jurisdiction over tenant's 42 U.S.C. § 1983 claims in complaint alleging housing authority did not afford due process in terminating tenant's section 8 benefits), *S.C.*, 453 Mass. 614 (2009).[10]

*Unfair process.* Furtick's sole source of income is his Social Security disability insurance benefits, an amount clearly insufficient to cover market-rate rent. According to his doctors, given his serious medical problems, the absence of decent, sanitary housing would place Furtick's health at serious risk.[11] Before terminating Furtick's critical housing assistance, the BHA was required to provide him with a fair process. See *Carter* v. *Lynn Hous. Authy.*, 450 Mass. at 637-638. Nothing of the sort was provided here.

First, the February 7, 2012, section 8 benefits termination notice from the BHA's leased housing division was defective. It incorrectly stated that "this decision is final and there is no further right to appeal this decision of the BHA." In fact, under the BHA administrative plan's termination procedure, a participant may obtain an administrative appeal hearing on the decision through a late request upon a showing of compelling

[9]Furtick's handwritten third-party complaint did not specify under which statute he was seeking relief. During the first oral argument on the BHA's motion to dismiss, the judge opined that Furtick had stated a claim under 42 U.S.C. § 1983.

[10]Not only is the BHA's argument that any claim by Furtick under 42 U.S.C. § 1983 was subject to the presentment requirement raised for the first time on appeal in violation of our procedural rules, it has no merit. See G. L. c. 258, § 4, third par. (expressly exempting third-party claims from presentment provisions of the Massachusetts Tort Claims Act).

[11]Furtick suffers from a suppressed immune system (stemming from a kidney transplant), schizophrenia, bipolar disorder, arthritis, and asthma.

circumstances.[12,13] No BHA representative informed Furtick of the compelling circumstances policy, or explained how to meet its requirements.

In her brief decision dated April 10, 2012, the BHA grievances and appeals administrator denied Furtick's request for a late hearing, and upheld the termination decision, based upon Furtick's failure to request a hearing within the initial twenty-day period (a factual impossibility) and his failure to provide evidence of compelling circumstances (a requirement about which he was not told). The BHA official signed the decision as an *administrator.* No compelling circumstances evaluation was made here by a *hearing officer* as required by the BHA administrative plan. See note 12, *supra.* Indeed, it is entirely unclear whether the administrator was even aware of Furtick's individual

---

[12]Section 13.6.3 of the BHA administrative plan provides the following in relevant part:

"If the Family fails to respond [to the proposed termination letter] within twenty (20) days . . . , the BHA will send the Participant a thirty (30) day notice of termination (by first class and certified mail). . . . The BHA will grant a request for a hearing when a Participant submits a late request, together with evidence of *compelling circumstances* that prevented the Participant from requesting a hearing within twenty (20) days.

"Compelling circumstances — when analyzing whether or not a participant's reasons for requesting a late hearing are compelling, *the hearing officer will consider* the following when determining whether or not the participant has good cause for requesting a late hearing: (1) the written facts or circumstances submitted by the participant which show that the participant is not willful (a willful act is a deliberate, intentional or voluntary act) or culpable (culpable is to be responsible or liable) in making the late request, which would require more than mere action or inaction (for example the participant's reason for not requesting a hearing timely should not due be [*sic*] to something the participant did or failed to do); (2) the swiftness with which the participant has attempted to remedy the default; (3) the existence of any meritorious defense to the underlying allegations; as well as, other equitable criteria such as: (a) whether the default resulted from a good faith mistake in following a rule or procedure; (b) the nature of the participant's explanation for not requesting a timely hearing; (c) the availability of other alternative sanctions; (d) whether not granting a late hearing would produce a harsh or unfair result." (Second emphasis added.)

[13]The notice also implies that there is no possibility of obtaining judicial review.

circumstances. The BHA's failure to follow its own policy set forth in the BHA administrative plan was a violation of HUD regulations.[14] See 24 C.F.R. § 982.54(c) (2012). The administrative decision resting upon such a flawed process was invalid and cannot stand. See *Wojcik* v. *Lynn Hous. Authy.*, 66 Mass. App. Ct. at 115. The finding of compelling circumstances as matter of law by the Housing Court judge was not shown to be incorrect. In the unique circumstances of the case and all that Furtick has endured, we decline to disturb the judge's ruling reinstating the housing assistance benefits.

*Conclusion.* The overarching mission of the BHA is to provide housing assistance to poor and low-income individuals. See *Boston Hous. Authy.* v. *National Conference of Firemen & Oilers, Local 3*, 458 Mass. 155, 156 (2010). In its rush to recapture Furtick's section 8 voucher, the BHA seems to have lost sight of its mission here.[15] The seasoned Housing Court judge pointed out the big picture to the BHA and suggested a reasonable settlement of this litigation (a hearing for Furtick). Compare *Casavant* v. *Norwegian Cruise Line, Ltd.*, 63 Mass. App. Ct. 785, 800 (2005) (Brown, J., concurring) ("[C]ounsel would [have been] well advised to attempt to settle this matter amicably, rather than pursue it further in the courts . . ."). The BHA ignored the advice, opting to pursue this case to the bitter end, a confounding decision in light of the serious procedural unfairness apparent on this record.

*Judgment affirmed.*

---

[14]Under § 13.7.1(d) of the BHA administrative plan and HUD regulations, the BHA was required to provide Furtick with the opportunity for a pretermination hearing regarding his "failure to act." See 24 C.F.R. § 982.555(a)(1)(v) (2012). At that hearing, Furtick would have been entitled to present evidence of all relevant circumstances, including mitigation evidence, and to request the imposition of a lesser sanction. See § 13.6(1)(a) of the BHA administrative plan; 24 C.F.R. §§ 982.552(c)(2)(i), 982.555(e)(5) (2012); *Carter* v. *Lynn Hous. Authy.*, 450 Mass. at 633-635.

[15]Because of Federal budget sequestration, no new vouchers are being issued at this time.